GEORGE W. TOWNS & wife *vs.* HENRY H. HALE & others.

A bond, given in a prosecution under the bastardy act, (Rev. Sts. *c.* 49,) conditioned that the accused shall appear and answer to the complaint and abide the order of the court thereon, does not bind the accused and his sureties to perform the final order of the court; but is discharged by his attendance at court so long as the action is pending and at the final order, and surrendering himself to be committed to prison for a failure to give bond to perform such order.

ACTION OF CONTRACT on a bond, given pursuant to Rev. Sts. *c.* 49, § 1, and conditioned that Hale should appear at the next court of common pleas, and answer to the complaint of Hannah J. Abbott, then sole, now the wife of George W. Towns, accusing Hale of being the father of a bastard child of which she was pregnant, and should abide the order of said court thereon.

The parties submitted the case to the decision of the court upon a statement of facts, in which it was agreed that Hale appeared at said court, and answered to the complaint, and upon a trial before a jury was found guilty, and adjudged by the court to be the father of the child; and it was ordered by the court that he should stand charged with the maintenance of the child, with the assistance of the complainant, and should pay certain sums at certain times, specified in the order, towards such maintenance, and should give bond, with sufficient sureties, to perform this order, and also to indemnify and save harmless, against all charges of maintenance, any town which might be chargeable with the maintenance of the child, and that he should stand committed until he should give such bond. It was also agreed that Hale, being then in court, was committed to prison under this order, and there remained until he was released by the jailer upon receiving a written release and discharge, signed by the female plaintiff, by her maiden name, since her marriage, and while she was still under age.

*R. B. Caverly*, for the plaintiffs, to the only point decided, cited *Hodge* v. *Hodgdon*, 8 Cush. 294; *Merrill* v. *Prince*, 7 Mass. 396; *Taylor* v. *Hughes*, 3 Greenl. 433; *Corson* v. *Tuttle*, 19 Maine, 409; *Adams* v. *Whiting*, 12 Pick. 196.

*B. F. Butler & G. M. Brooks*, for the defendants, to the same point, cited *M'Hugh, petitioner*, 3 Cush. 452; *Hodge* v. *Hodgdon*, 8 Cush. 294; *Woodcock* v. *Walker*, 14 Mass. 386; *The State* v. *Chesley*, 4 N. H. 366; *Mather* v. *Clark*, 2 Aik. 209; *Gray* v. *Fulsome*, 7 Verm. 456. [*Dunbarton* v. *Palfrey*, 7 Foster, 171.]

DEWEY, J. The question presented in this case is, whether the bond, originally given by one accused of being the father of a bastard child, upon the order of a justice of the peace requiring the party " to give bond, with sufficient sureties, to appear and answer to the said complaint at the next court of common pleas, and to abide the order of the court thereon," is discharged upon the personal appearance of the party at the several terms of the court holden while the action is pending, and at the final adjudication, when the party is adjudged to be the father of the child, and is ordered to stand charged with the payment of a certain weekly allowance for the maintenance of the child, and to give bond with sufficient sureties to perform the above order, and that he stand committed until he shall give such bond, and the commitment of the party to prison in pursuance of such order, he not giving a new bond as security for the future maintenance of the child.

The plaintiffs insist that the original bond not only binds the sureties thereon for the personal appearance of the party at the time of the trial, and adjudication and order for future support of the child; but also includes the further obligation that the party shall actually perform the order for payment for the maintenance of the child, and give a new bond with sureties to that effect.

Such seems to have been the construction of a similar statute by the courts of the State of Maine, as shown by the cases of *Taylor* v. *Hughes*, 3 Greenl. 433, and *Corson* v. *Tuttle*, 19 Maine, 409, cited by the counsel for the plaintiffs. But we have seen no reason to suppose that such has been the doctrine of this court.

The case of *Merrill* v. *Prince*, 7 Mass. 396, which has been supposed to give some sanction to it, from the remarks of Chief Justice Parsons, in stating the benefits that result from giving a

bond rather than a recognizance, and observing, as one of such benefits, that the whole penalty of a bond was not to be enforced, as in the case of a recognizance, but the penalty might be reduced, so as to be a security for the maintenance, probably had reference to a case where the party did not appear and submit to the order of imprisonment. However that may be, the only question before the court in that case was, whether the security to be taken by a justice of the peace, in such cases, must be by a bond or recognizance.

In the case of *Adams* v. *Whiting*, 12 Pick. 196, there was an avoidance and default of the party at the time he was adjudged the father of the child, and an order of maintenance passed; and this default and avoidance were held to be a breach of the bond.

The case of *Hodge* v. *Hodgdon*, 8 Cush. 294, is more relied upon by the plaintiffs, to sustain their position, that the original bond is broken by a failure to pay the money ordered by the court to be paid for the maintenance of the child. There are remarks, in the opinion of the court in that case, which certainly have that bearing; but a careful examination of the case will show that, as an authority, it goes no further than to decide that where the party did not appear and surrender himself at the time of the adjudication and order for maintenance, and submit himself to an order that he stand committed until he comply with the final order of the court, his sureties on the original bond may properly be chargeable with a breach of the bond, and be held to pay such money as the court may have ordered to be paid for the maintenance of the child. The principal point controverted in that case was as to the necessity of a default of the defendant on the complaint being entered on the record, before his sureties could be charged on the bond. And it was very properly held that that was not necessary, and that it was the duty of the party to take notice of any step in the proceeding, and to attend personally when his personal attendance was by law necessary. This he had not done. He was not present, and did not surrender himself to abide the order of court " that he stand committed " &c. On the

final judgment, the party must of course be present, and give the required new bond, or be committed to prison until he give such bond. This failure to be thus present was a breach of his original bond, and quite sufficient to charge his sureties in that case. The case required no further adjudication; and we are not satisfied that any sound reason exists for holding that the failure to give the new bond ordered, when the party is present and ready to abide the order of court that he be committed to prison until he gives it, is a breach of the original bond.

We think the original bond is intended to secure the personal attendance of the party alleged to be the father of the child, rather than as a security for the performance of the final order for maintenance of the child. This would seem to be so from analogy to recognizances and bail in other cases. It would seem to be so from § 2 of this chapter, providing " that if the sureties in the bond shall, at any term of said court, object to being any longer held liable, the court may order a new bond to be taken; and the defendant shall stand committed, until he give such new bond." Here we perceive it is placed in the power of the sureties on the original bond to discharge themselves from all liability for the performance of the final order for maintenance of the child, by a surrender of the party while the action is pending in court. The only security substituted is the body of the party, to be held in custody until he gives another bond with new sureties. This is precisely the result when the party is surrendered on the final order, and is committed until he gives the bond ordered.

Looking at it in another aspect, we may ask why should not the party charged with being the father of a bastard child have the common privilege of being at large before his trial, upon adequate security for his personal appearance? Why should the complainant have any greater security for the performance of the final order in such a case, than she has against one who has been committed to jail on the original warrant for want of sureties, and is confined in jail to abide the final order? The view we have taken of the case secures the personal appearance of the party alike in both cases, when the

final order is made. That being effected, sureties on the original bond should be held to have performed the condition of their bond, the object of which was to secure his appearance, to abide the order of the court, as declared in the final decree. See *M'Hugh, petitioner,* 3 Cush. 452, and *Gray* v. *Fulsome,* 7 Verm. 456.

In the case now before us, the party defendant in the complaint was present in court at the making of the final order, and was thereupon committed to prison for not giving a new bond, and so remained for some considerable time, and until released by the jailer. Whether the jailer had proper authority for releasing him it is immaterial now to inquire, as the commitment was of itself sufficient to discharge the sureties on the original bond. The condition of the original bond was fully performed by the personal attendance of the party at all times when his attendance was by law required, as well as at the final adjudication, and by surrendering himself to be committed to prison until he should give the new bond ordered by the court, and thus " abiding the order of court thereon."

*Judgment for the defendants.*