SWEENEY *v.* STATE.

## Opinion delivered December 3, 1923.

1. CRIMINAL LAW—EVIDENCE OF DECLARATION OF ACCUSED.—Where there was testimony that accused and another were on trial before a committing magistrate for alleged robbery, testimony that accused, after the examining trial, stated to the other, who was discharged, that it was not fair for accused to be committed to jail and the other to get out, that the other ought to go to jail too, was competent as a circumstance tending to prove a conspiracy between the two to commit robbery.

2. CRIMINAL LAW—HARMLESS ERROR.—In a prosecution for robbery, testimony that accused stated to one tried with him in examining court and discharged, that the latter ought to be committed to jail also, if erroneously admitted, was not prejudicial.

3. ROBBERY—EVIDENCE.—In a prosecution for robbery, evidence that defendant was seen, two weeks before the alleged robbery, near the scene of the robbery, was admissible to show his familiarity with the surroundings.

4. CRIMINAL LAW—HYPOTHETICAL QUESTIONS.—It was not error to refuse to permit a witness to answer a hypothetical question which assumed facts to exist when there was no testimony tending to establish such facts.

5. WITNESSES—IMPEACHMENT.—Statements of a witness inconsistent with his testimony cannot be shown where no proper foundation has been laid.

6. WITNESSES—IMPEACHMENT.—In a prosecution for robbery, it was not error to permit the prosecution to ask accused on cross-examination if he was a gambler, and whether he had been in jail, in the absence of a specific objection.

Appeal from Randolph Circuit Court; *John C. Ashley,* Judge; affirmed.

*Schoonover & Jackson,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

WOOD, J. The appellant was convicted of the crime of robbing Eli Hufstedler of certain moneys in June, 1922. The testimony of Hufstedler was to the effect that, in June, 1922, in Randolph County, Arkansas; the appellant crawled up behind him and one McMullen, with his gun drawn, and commanded witness to put up his hands and give up his money. The testimony tended to

prove that appellant obtained from the witness and his companion about $172. The witness testified that he had been in the habit of carrying money in a belt on his person. Appellant remarked to witness as follows: "You have more money on you. Where is that belt?" Appellant tore witness' pants open to see if witness had the belt on. Witness was asked to state who knew that he carried money in his belt, and answered, "Clarence Estes knew I carried money in a belt." The appellant objected to the answer to the question and to the refusal of the court to withdraw same from the jury. Witness, over the objection of appellant, was permitted to state that Clarence Estes had known for six months that witness carried money in a belt, and that he had known it up to three weeks before the robbery. The witness said he saw Clarence Estes on the day of the robbery, just before and just after the robbery. Estes lived at Imboden, Randolph County, near Sloan's, on Third Street. Appellant requested the court to exclude the above testimony, which the court refused to do, to which ruling the appellant excepted. Witness had seen appellant and Sam McCoy the Sunday before, but didn't know appellant then. Witness described in detail the manner in which appellant attempted to disguise himself, his dress and certain marks, a scar on his cheek, and positively identified the appellant as the man who robbed witness of his money. Witness stated that he and other parties sometimes went to the place where the robbery occurred for the purpose of gambling. Witness stated that the robbery occurred between nine and eleven o'clock. The witness was asked, on cross-examination, if he had not stated before that it was twenty minutes to twelve o'clock, and answered, "No sir, I said I got home at twenty minutes to twelve." Witness stated that he didn't remember that he stated before that the robbery took place twenty minutes before twelve o'clock. It happened before that time.

Witness McMullen testified that he and Hufstedler were robbed on the day alleged, about twelve o'clock. He could not say positively that appellant was the man, but he looked like the man who robbed them. Another witness stated that he saw the appellant, on the day of the alleged robbery, coming from Cedar Brake, about half bent over, with a blue handkerchief over his face; that he spoke to appellant, and asked him what he wanted. Appellant replied that it was none of his business. Witness followed appellant, and he got faster as witness approached him. Witness positively identified appellant as being the man that he saw. It was some time between eight and nine o'clock in the morning.

Witness Andy Holcroft said that, on the day of the robbery, he saw appellant or a man that looked like him from his eyes up, at Cedar Brake, at Imboden. Witness had started to town, and heard Hufstedler hollering, and ran up to see what was wrong, and there was a fellow standing behind Hufstedler with a gun on him, taking his money. Witness, after describing the appearance of the man he saw, stated that he could not identify the appellant as the man, except his eyes looked natural. Witness stated that the robbery occurred between ten and twelve o'clock. His best judgment was about eleven-thirty. Witness was asked the following question: "If he had not heard Eli Hufstedler say, in private conversation with witness, after the case had been disposed of in the examining court, that the robbery took place within twenty minutes of twelve o'clock?" The State objected to the question, and the court sustained the objection, to which the appellant excepted.

Witness J. A. Baker testified that he saw the appellant two weeks before, near the scene of the robbery, through the cedars, and that when witness and others got up and left he followed them up the creek. Appellant objected to the above testimony of the witness Baker. The court overruled the objection, to which ruling the appellant duly excepted.

Witness Crabtree testified that he was at the examining trial of the appellant and Clarence Estes for the robbery. The trial was had just across the river from Imboden. He saw the appellant that day, and also Clarence Estes. Witness was permitted to testify, over the objection of appellant, that he heard a conversation between Clarence Estes and appellant, on the day of the examining trial, as follows: Appellant said, "Clarence, it is not fair for me to go down there by myself and you get out of this; you ought to go with me." The examining court had just bound appellant over to await the action of the grand jury and had turned Clarence Estes loose. The appellant made the remark in a jocular way. Witness didn't know why he said it. He spoke so every one around could hear him. The appellant duly excepted to the ruling of the court in admitting the above testimony.

J. H. Turner was a witness for the appellant. He testified that he saw the appellant on the streets on the day of the alleged robbery, at Hoxie, between nine and ten o'clock, and saw him again on the streets at Hoxie about 11:40 o'clock. Witness testified that he didn't know how far it was from Hoxie to Imboden. He had gone over the route a number of times. He had driven it in two hours. He didn't know where the cedar brake was—the alleged place of the robbery. Witness, at the time of the alleged robbery, was marshal of the town of Hoxie. Witness was asked the following question: "Basing your answer upon your experience as an officer, and knowing the country as you do, and basing your answer upon your knowledge of the distance from Imboden to Hoxie, and basing your answer upon your knowledge as to the time it would necessarily require to travel over the usual route of travel, by the method of travel known at the time of the alleged commission of this offense, could this defendant have been in the town of Imboden, or at a point from a quarter to a half mile north of Imboden, in that cedar brake, and committed the

crime charged against him in this indictment, and been in Hoxie, at the time you saw him there that day?" The court refused to permit the witness to answer the question, to which ruling the appellant duly excepted.

Several witnesses testified on behalf of the appellant, and their testimony tended to establish an alibi. The appellant was a witness in his own behalf, and, among other things, he stated that he didn't know anything about the robbery, and had never heard of it until he was arrested at Jonesboro, Arkansas. He testified as to his whereabouts on the day of the robbery and also where he stayed the night before. On cross-examination he was asked where he lived, and answered that he lived at Truman. He was asked how long he had been at Hoxie, and stated that he had been there for two or three years, off and on, a week or so at a time. Then he would go home to help his father with his crop.

Over the objection of appellant he was also asked the following question: "Q. You are a gambler—you gamble?" Witness answered, "I gamble some, but I am not a gambler. Q. You have been in jail? A. Yes sir, I have been in jail at Walnut Ridge and here." Appellant, over his objection, was then asked, "Anywhere else?" and answered, "Yes sir; at Harrisburg." On redirect examination appellant testified as follows: "Q. The time you were in jail here was when you were charged for this offense? A. Yes sir. Q. And also when you were in jail in Walnut Ridge?" and answered, "Yes sir." Appellant was then asked this question: "What were you in jail for at Harrisburg?" and answered, "I was charged with robbery." He was asked, "Were you acquitted on that charge?" and answered, "Yes sir."

The jury returned a verdict of guilty. The court overruled appellant's motion for a new trial, and entered a judgment sentencing him to the State Penitentiary for a period of three years, from which is this appeal.

The first assignment of error is that the court erred in permitting the prosecuting witness to state that Clarence Estes knew that he had money, and that he carried money in a belt, and that he saw Clarence Estes on the morning of the day of the robbery—just before the robbery and just after—and that Estes lived at Imboden. The appellant also contends that the court erred in permitting the witness Crabtree to testify that, after the examining trial of appellant and Estes, he heard appellant say to Estes, in effect, that it was not fair for appellant to be committed to jail and for Estes to get out; that Estes ought to go too.

There was testimony in the record to the effect that appellant and Estes were on trial before the committing magistrate for this alleged robbery and that the above remarks of the appellant were concerning the result of that trial, the appellant having been bound over to await the action of the grand jury and Estes having been discharged. This testimony was in the nature of a confession by the appellant that Estes was with him in the charge of alleged robbery, and that, if it were fair to bind the appellant to await the action of the grand jury, Estes, under like circumstances, should also be bound. The testimony was competent as a circumstance tending to prove a conspiracy between appellant and Estes to commit the alleged robbery. The testimony was competent as a circumstance because it tended to prove that the appellant and Estes had knowledge of the fact that Hufstedler had money, which he carried on his person in a belt. If we are correct in our conclusion that the effect of the above testimony tended to prove a conspiracy between appellant and Estes to rob Hufstedler, then it was clearly competent.

But, if we are mistaken, and if the testimony did not tend to prove a conspiracy between the appellant and Estes to rob Hufstedler, and if, as appellant contends, it only tended to prove that Estes, and not the appellant, had knowledge of the fact that Hufstedler carried money

on his person in a belt, then the testimony could not possibly have been prejudicial to the appellant. On the contrary, it would rather tend to show that Estes, and not the appellant, was the one who had the guilty knowledge, and was most likely the one who perpetrated the crime. Certainly there was no error prejudicial to the appellant in the admission of this testimony.

The court did not err in permitting the witness Baker to testify that he saw the appellant about two weeks before the date of the robbery, near the scene of the robbery, and that, when witness and others got up and left, he followed them up the creek. The testimony of this witness further disclosed that at Cedar Creek, the *locus* of the robbery, there was a thicket which was a resort or rendezvous, where the witness Baker and others went to play cards and shoot craps every Sunday. The testimony was competent. It tended to identify the appellant and to prove that he had, a very short time previous to the robbery, visited the scene thereof and obtained knowledge of the surroundings. The State had the right to prove that the appellant visited the scene of the robbery and obtained knowledge of the surroundings, and also the fact that parties were assembled there to gamble. This knowledge would better enable him to carry out his purpose, if such was his purpose, to commit the crime, which was soon thereafter committed and of which he was accused.

There was no error in refusing to permit the witness Turner to answer the hypothetical question which appellant's counsel propounded to him. This question assumed some facts to exist which there was no testimony tending to establish, and the question was not responsive to any undisputed facts in evidence. Besides, the facts to which the witness had testified were not of a character to call for an opinion on the part of the witness. It was not expert testimony, nor was it testimony in which it was proper to elicit the opinion of the witness. The witness stated the facts within his knowledge, and

the conclusion to be drawn from these facts was for the jury. The question propounded to witness Andy Holcroft, to which appellant objected, was not proper. No proper foundation had been laid for such question. The court did not err in refusing to allow the question to be answered.

The court did not err in refusing to permit counsel for the State, on cross-examination, to ask the appellant if he were a gambler, and whether he had been in jail. The appellant, in answer to these questions, stated that he had gambled some, and that he had been in jail at Walnut Ridge, at Pocahontas, and at Harrisburg. The connection in which these questions were asked shows that the prosecuting attorney was attempting to prove the recent residence, occupation and history of the accused as affecting his credibility. To be sure, it would not be proper to ask an accused, who becomes a witness in his own behalf, whether he had recently been in jail on account of the crime for which he was then being tried, or for other crimes, merely for the purpose of showing that he had been previously accused of crime. Such questions, on cross-examination, would be like asking the accused if he had not been accused or indicted for crime. We have frequently held that it was not proper to ask a defendant, on cross-examination, whether he had been previously indicted for crime. *Bates* v. *State,* 60 Ark. 450; *Hunt* v. *State,* 114 Ark. 239; *Johnson* v. *State, ante,* p. 111; *Youngblood* v. *State, ante,* p. 144. An indictment is a mere accusation, and, of itself, does not carry any implication or warrant any inference either of guilt or of immoral or bad character. Likewise, the mere fact that a defendant had recently been in jail would not of itself justify the inference that the accused was a man of bad morals, or guilty of any crime that would affect his credibility as a witness. But where such questions are asked, not for the purpose of showing merely that the witness has been accused or indicted for a crime, or

incarcerated merely upon a charge of criminal conduct, but for the purpose of showing that the witness' habits are vicious, his character immoral, his occupation disgraceful or disreputable, his associations and surroundings with criminal classes, and that the imprisonment might have been the result of, or as punishment for, a felony of which the accused had been convicted, such questions may be asked, for they tend to impair the credibility of the witness.

As is said by Judge HEMINGWAY, speaking for the court, in the well-considered case of *Hollingsworth* v. *State*, 53 Ark. 387: "It is always competent to interrogate a witness, on cross-examination, touching his present or recent residence, occupation and associations; and if, in answer to such questions, the witness discloses that he has no residence or lawful occupation, but drifts about in idleness from place to place, associating with the low and vicious, these circumstances are proper for the jury to consider in determining his credibility." And again, quoting from the case of *Real* v. *People*, 42 N. Y. 270: "A witness, upon cross-examination, may be asked whether he had been in jail, the penitentiary or State prison, or any other place that would tend to impair his credibility, and how much of his life he has passed in such places."

In this case it is manifest, from the connection in which the questions were propounded, that the State was endeavoring to ascertain what was the present, the recent, and past history and antecedents of the accused, his occupation and associations, as affecting his credibility. If counsel for the appellant conceived that the questions were propounded merely for the purpose of showing that the appellant had been accused of crime, he should have asked the court specifically to rule that such questions were not proper for that purpose. As these questions were asked just following the previous questions as to appellant's residence, and whether or not appellant gambled, and after his affirmative answer that

he did gamble, it occurs to us that a general objection was not sufficient to warrant the court in excluding the questions. They come well within the rule that such questions are proper for the purpose above stated, as announced in *Hollingsworth* v. *State, supra.* See also *Clayton* v. *State,* and cases there cited.

We find no prejudicial error in any of the rulings of the court, and the judgment is therefore affirmed

HART, J., (dissenting). Judge Humphreys and myself think that the trial court committed prejudicial error in allowing the prosecuting attorney to ask the defendant if he had not been in jail, and requiring the defendant to answer the question. In answering the question of whether or not he had been in jail the defendant said that he had been in jail at Walnut Ridge and here (meaning, by the latter, the place where he was being tried). Further questioning elicited the response from the defendant that he was in jail at Walnut Ridge and at the county seat, where he was being tried, charged with the offense of which he was convicted.

Again, he was asked if he had been in jail anywhere else, and he answered, "Yes sir, at Harrisburg." In response to further questioning he answered that he was in jail at Harrisburg, charged with robbery. He stated, further on, that he had been acquitted of that charge.

While we recognize that there is a distinction between independent evidence introduced for the purpose of impeaching a witness, under § 4187 of Crawford & Moses' Digest, and the questions which are permitted, in the discretion of the court, to be put to a witness tending to affect his credibility, within the rule laid down in case of *Hollingsworth* v. *State,* 53 Ark. 387, we are of the opinion that the questions asked do not fall within the rule laid down in the case last cited. Judging by the context of the decisions from New York, there cited, it is evident that the court meant that the defendant could be questioned as to being in jail as a punishment for crime. This is shown by the later decision of *Bates*

v. *State,* 60 Ark. 450. In that case it was held that it was error to permit the defendant in a criminal case to be asked, on cross-examination, whether he had not been previously indicted for a felony, and that his answer was that he was indicted, but acquitted, did not remove the prejudice that may have resulted.

The court again quoted from a New York case, with approval, the following: ''The single fact that he (the defendant) had been complained of and held for trial for the commission of a crime did not affect his moral character.'' This was upon the ground that the witness was presumed to be innocent until convicted. This rule of evidence follows the defendant throughout the trial, and it is plain to us that it is violated if his credibility can be affected by the fact that he has been in jail on account of the crime for which he is being tried or on account of another crime for which he was acquitted.

The prosecuting attorney may ask the defendant, on cross-examination, if he has not committed another crime, for this is asking him if he had not committed the act. But this court has repeatedly held that a defendant could not be asked whether or not he had been indicted for a particular offense, on the ground that an indictment does not prove guilt. To ask him if he has not been accused of another crime and confined in jail pending a trial is to allow that to be done indirectly which we have said cannot be done directly. Such a course is equivalent to asking a defendant if he has not been indicted or charged with another crime. Again, to allow his credibility to be affected by the fact that he was so unfortunate as not to be able to give bail, upon being arrested for the crime for which he is being tried, is, in effect, to destroy the rule of evidence that the defendant is presumed to be innocent until proved to be guilty.

Again, in a capital case, where the defendant was not entitled to bail, his credibility as a witness would be affected by the fact that he had been confined in jail, if he should elect to take the stand in his own behalf, and

thus the presumption of innocence would be effectually destroyed. Courts should not suffer prosecuting attorneys to do anything indirectly which could not be done directly. The fact that a defendant has been in jail, charged with the crime for which he is then being tried, or for an independent crime, should not be allowed to affect his credibility as a witness, and thus effectually overcome the presumption of innocence in his favor.