JOHNSON *v*. MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered February 16, 1925.

1. TRIAL—INSTRUCTIONS IGNORING ISSUES.—In an action by a locomotive fireman for damages for personal injuries received in derailment of the engine, instructions directing a verdict for defendant if the jury believed that a trespasser caused the derailment by opening a switch were erroneous as disregarding plaintiff's theory that but for a defective headlight the engineer could have seen the switch signal in time to avoid derailment.

2. NEGLIGENCE—CONCURRING ACTS.—Where the negligent acts of two persons concur to produce an injury, the author of either negligent act is liable to the injured party for the damages sustained.

3. EVIDENCE—PRIVILEGE OF COMMUNICATION TO PHYSICIAN.—Where an injured employee of a railroad was examined by a surgeon at a hospital maintained by employees' dues, his testimony as witness for the railroad as to information acquired in such examination was privileged, though the examination was agreed upon by the employee and claim agent to determine the extent of plaintiff's injuries.

4. WITNESSES—TEST OF CREDIBILITY.—In an action by a locomotive fireman against this railroad company for personal injuries resulting from derailment, the engineer testifying for the plaintiff may, for the purpose of testing his credibility, be asked on cross-examination whether he had received anything on account of the accident.

5. APPEAL AND ERROR—EXCLUSION OF TESTIMONY—PREJUDICE.—
Alleged ·error in excluding a question asked a witness will not
be ·considered on appeal where the record fails to show what
answer would have been given.

Appeal from Crawford Circuit Court; *James Coch-*
*ran,* Judge; reversed.

### STATEMENT OF FACTS.

George J. Johnson sued the Missouri Pacific Rail-
road Company to recover damages for personal injuries
alleged to have been sustained by him while in the
employment of. the defendant as a locomotive fireman.

George J. Johnson was twenty-nine years of age, and
lived at Van Buren, Arkansas, at the time he was injured.
According to his testimony, on the 26th day of December,
1922, he was locomotive fireman on engine 1224, pulling
extra train 1224 north from Van Buren, Arkansas, to
Coffeyville, Kansas. After they got out on the road at
Greenwood Junction, Johnson noticed that the headlight
and the lights in the engine cab were defective. The
headlight did not show down the track far enough, and
the lights in the cab flickered. He spoke to the engineer
about it, and the latter. replied that they would have to
go to Coffeyville and have the lights fixed there. At
Sallisaw, Oklahoma, the train met the southbound fast
train. They waited on the siding fifteen or twenty
minutes for it. The train then went on towards Upson.
South of Upson there is a curve. The point of the curve
is about 500 yards from the south switch. The curve ·
favors the engineer, who is on the right side of the
engine. It is 500 yards straight track from the point
of the curve to the south switch. The switch in question
was open, which caused the train to be derailed. The
engine turned over on the engineer's side, and Johnson
was severely injured. The switch-stands in question had·
red and green signals on them. The red means danger,
and the green is the clear-track signal. You can tell
whether a switch is blocked by the light on the switch-
stand, and also by the· position of the lights. If the
engine in question had been equipped with a . proper

headlight, the engineer could have been able to distinguish the red board a distance of 1,000 feet.

Frank Hedrick, the engineer on the train in question, was also a witness for the plaintiff. Soon after they started on the run he noticed that they did not have very good lights. The headlight of the engine was very dim. If a horse had been on the track, he could not have seen it 400 feet away. Ordinarily he could have seen it 1,000 to 1,200 feet away. If the track had been straight where the accident occurred for a distance of 800 feet, he would have been able to see the target on the switchstand if he had had good lights. He would have been able to stop his train in 600 feet. On the night in question he could not see to tell whether the switch was spread open the distance of 800 feet. If there had been a good light on his engine he could have told that far whether or not the danger signal showed on the switch.

A physician for the plaintiff testified as to the character and extent of his injuries. According to his testimony, the injury to the plaintiff was permanent, and was a very severe one.

In brief, the evidence for the defendant tends to show that a trespasser had knocked the lock off of the switch-stand, and spread the switch open a short time before the accident occurred. The trainmen on the train which had last passed the switch-stand, going towards the train in question, testified that the switch was closed when their train passed it.

The jury returned a verdict in favor of the defendant, and the plaintiff has appealed.

*George G. Stockard,* for appellant.

The court erred in admitting the testimony of Dr. Zeiner over the objection of appellant. C. & M. Dig. § 4149; 98 Ark. 352; 113 Ark. 296; 114 Ark. 112; 117 Ark. 396; 90 N. W. 815, 117 Iowa 442; 24 Hun (N. Y.) 43; 124 Iowa 623; 111 Ark. 554. The court erred in refusing to allow appellant to cross-examine witness Hedrick upon matter brought out by appellee. The

evidence was proper under the rule announced in 75 Ark. 251. Instruction No. 3 given at the request of defendant was erroneous, without the qualification suggested by plaintiff 149 Pac. 421, 96 Kan. 30; 184 Mass. 476, 69 N. E. 338. Instruction No. 11 was erroneous. 111 Va. 771, 69 S. E. 938; 90 Ark. 407.

*Thomas B. Pryor* and *Vincent M. Miles,* for appellee.

The purpose of Dr. Zeiner's examination was to acquire information for both parties in a controversy between them, and his testimony was properly admitted. 111 Ark. 548; Jones on Evidence in Civil Cases (3rd ed.), § 759; 28 R. C. L. § 129 p. 540. The cases cited by appellant on the point are not applicable under this state of facts. The case cited by appellant at 96 Kan. 30 149 Pac. 421 is an authority in support of instruction No. 6 about which he complains, the same being on the question of proximate cause. It is too late to raise a specific objection to instructions after the verdict. 164 Ark. 556.

HART, J., (after stating the facts). Counsel for the plaintiff contends that the court erred in giving instructions Nos. 3, 6 and 7 at the request of the defendant. These instructions read as follows:

"3. You are instructed that it is not the duty of the defendant to have any person constantly inspecting its switch-lights and switch-stands, but that if, in the usual course of its business, and without negligence, the defendant placed a light in the proper manner on its switch at Upson, and had the switch properly locked and lighted for the main line, and that some person, without notice to the defendant, broke open such switch, and that plaintiff was injured as a result of the breaking of said switch-lock and the opening of said switch, then your verdict will be for the defendant, unless the defendant knew that said switch was broken or dangerous.

"6. You are instructed that you are not to guess or conjecture as to what was the proximate cause of the derailment of the train whereby the plaintiff was injured, and, if you believe that said derailment which injured

the plaintiff would not have occurred except for the fact that said switch had been opened by trespassers without notice to the defendant, than the action of such trespassers in opening said switch was the proximate cause of the derailment, and your verdict must be for the defendant.

"7. You are instructed that, although you may find that the headlight did not focus as usual, yet this will not entitle the plaintiff to recover if you believe that the proximate cause of the plaintiff's injury was the act of third persons, without notice to defendant, in breaking the lock of said switch and opening same. By proximate cause is meant the nearest efficient cause, or, in this case, the thing without the happening of which the derailment could not have happened."

The instructions in question were prejudicial, because they made it the imperative duty of the jury to return a verdict for the defendant if it believed that the switch was thrown open by a trespasser. This constituted reversible error. It was the theory of the plaintiff that, notwithstanding the switch had been thrown open by a trespasser, if the engine had been equipped with a good headlight, the engineer could have seen that the switch was open and could have stopped his train in time to have avoided the injury.

Evidence on the part of the plaintiff tended to show that, when the switch was thrown, a red signal would be displayed upon it. The engineer, at a distance of 800 to 1,000 feet, could have discovered that the red signal was displayed. He could have told this, not only by the color of the signal, but by its position on the switch-stand. The instructions complained of wholly ignored this theory of the plaintiff.

Instruction No. 3 told the jury that, if the defendant had placed a light in the proper and customary way on the switch-stand in question, had left the switch properly locked, and it had been broken open by some third person without notice to the defendant, and the plaintiff was injured as the result of the breaking of the

switch-lock and the opening of the switch, its verdict should be for the defendant, unless the defendant knew that said switch was broken or dangerous. Thus it will be seen that this instruction entirely ignored the plaintiff's theory of the case.

As we have already seen, suppose the switch-lock had been broken and the switch thrown open only five minutes before the train in question came along; this would not have relieved the defendant from responsibility if the jury should believe the plaintiff's evidence. According to the evidence for the plaintiff, if a proper headlight had been on the engine, the engineer could have seen the danger signal on the switch-stand at a distance of 800 feet and could have stopped the train in 600 feet. The engineer was keeping a lookout, and the jury might have found that he could and would have stopped the train before it got to the switch if he had had a good headlight. Therefore, even though some trespasser broke the switch-lock and opened the switch only a few minutes before the train came along, it cannot be said that this act alone caused the injury; for, if a proper headlight had been on the engine, the jury might have found that the accident could and would have been prevented.

The error in this instruction was emphasized by instructions Nos. 6 and 7. Instruction No. 6 told the jury that, if it believed that the derailment would not have occurred except for the fact that the switch had been opened by a trespasser without notice to the defendant, then the act of the trespasser in opening the switch was the proximate cause of the derailment, and that its verdict must be for the defendant.

Instruction No. 7 told the jury that, although the headlight did not focus as usual, this fact would not entitle the plaintiff to recover if the jury believed that the proximate cause of the plaintiff's injury was the act of a third person, without notice to the defendant, breaking the lock of the switch-stand and opening it.

These instructions emphasized the fact that the court wholly ignored the plaintiff's theory of the case, and in effect told the jury that, if a trespasser opened the switch, this was the proximate cause of the injury to the plaintiff, and that it must find for the defendant. Now, no matter if a trespasser did break the lock and open the switch, it cannot be said that this act alone was the proximate cause of the injury. The jury might have found that the negligence of the defendant in failing to equip its engine with a good headlight was a concurring cause of the injury.

Where the negligent acts of the defendant and another concur to produce an injury, the author of either negligent act will be liable to the injured party for damages sustained. *Jenkins* v. *Midland Valley Rd. Co.*, 134 Ark. 1; *St. L. I. M. & So. Ry.* v. *Steel*, 129 Ark. 520; *St. L. S. W. Ry. Co.* v. *Mackey*, 95 Ark. 297, and *Bona* v. *Thomas Auto Co.*, 137 Ark. 217.

In view of another trial, we desire to call attention to two other errors which would not call for a reversal of the judgment had proper instructions been given and a verdict rendered in favor of the defendant.

The first of these alleged errors is in the action of the court in allowing the testimony of Dr. Zeiner to go to the jury. According to the testimony of the plaintiff, he was first examined by the physician of the Missouri Pacific Hospital Association at Fort Smith, Arkansas, and they were not certain as to the extent of his injuries. The plaintiff was a member of the Missouri Pacific Hospital Association, and his dues, together with those of the other employees of the railroad company, kept up the various hospital associations of the railroad, and the physician and surgeons employed therein were paid by said dues. Therefore it follows that all these physicians and surgeons were the physicians and surgeons of the employees of the railroad company.

Owing to the uncertainty as to the extent of his injuries, the plaintiff agreed with the claim agent of the railroad company to go to St. Louis and be examined

with a view of ascertaining the extent and character of his injuries, in order that he might settle therefor with the claim agent. After the plaintiff had been examined by the surgeon at St. Louis, the latter was called as a witness on the trial of the case to testify on behalf of the defendant as to the character and extent of the plaintiff's injuries. The plaintiff objected to him testifying, and the court allowed the surgeon to testify in behalf of the defendant over the objections of the plaintiff.

This court has decided that the incompetency of a physician concerning information acquired while attending a person in a professional capacity extends to a physician connected with a hospital, who offers testimony as to the condition of a patient therein, where his duties in the hospital require him to obtain information which is necessary to enable him to determine the patient's condition and prescribe for him. *Poinsett Lbr. & Mfg. Co.* v. *Longino,* 139 Ark. 69.

A physician in charge of a railroad hospital, whose services are compensated by assessments upon the wages of the railroad employees, acts in a professional employment, within the rule excluding communications made by a patient to his physician, in the course of professional capacity in examining an injured employee who is sent to the hospital, and eliciting information as to his injuries on the day of the examination. *McRae* v. *Erickson* (Cal.) 82 Pac. 209; *Colorado Fuel & Iron Co.* v. *Cummins* (Colo.), 46 Pac. 875; *Obermeyer* v. *F. D. Logeman Chair Mfg. Co.,* St. Louis Court of Appeals, 96 S. W. 673; and *Freel* v. *Market Street Cable Ry. Co.* (Cal.), 31 Pac. 730.

Counsel for the defendant admit the correctness of the general rule, but attempt to differentiate the case before us on the ground that the plaintiff agreed with the claim agent of the railroad company to go to St. Louis and be examined by the general surgeon in charge of the hospital there in order to learn the character and extent of his injuries with a view to a settlement. This did not make any difference. The General Hos-

pital Association at St. Louis was kept up by contributions from the employees of the railroad, and the physician and surgeon in charge were the physicians and surgeons of the employees. The plaintiff had it in his mind to be treated by the surgeon there as well as to be examined with a view to making a settlement with the railroad company. If he afterwards changed his mind and did not wish to settle or treat with the railroad company, he had the right to do so, and this would not constitute a waiver of the privilege.

In this connection, it may be stated that when Johnson went to St. Louis he reported to Dr. Vasterling, the chief surgeon of the General Hospital Association at St. Louis. Dr. Vasterling assigned the case to Dr. Zeiner, who was a member of his staff. It is true that Dr. Zeiner did not devote all of his time to surgical operations at the Missouri Pacific Hospital at St. Louis, but nevertheless he was a member of the general staff and was paid by the employees of the railroad company for his services in that respect.

Inasmuch as there was a finding in favor of the defendant, the admission of this testimony would not have prejudiced the plaintiff and does not constitute reversible error.

Another assignment of error relates to the testimony of Frank Hedrick. On cross-examination counsel for the defendant asked him if he had ever been paid anything by the railroad company on account of the accident in question. Hedrick replied that he had not. The circuit court properly held that it was competent for counsel for the defendant to cross-examine the witness on this point for the purpose of testing his credibility.

Councel for the plaintiff then asked the witness if he had been promised anything by the railroad company on account of injuries suffered by him in the accident. Objections was made to this question by counsel for the defendant, and the court sustained the objection. The record does not show what the answer of the witness

would have been, and this court has repeatedly held that the exclusion of evidence is not ground for a reversal where appellant fails to show what the excluded evidence was. *Russell* v. *Brooks,* 92 Ark. 509; *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, and *Battle* v. *Guttrey,* 137 Ark. 228.

We call attention to the general rule, however, that, where a part of the matter or transaction has been given in evidence, it is competent to develop the whole matter or transaction in order to explain or qualify the testimony already given. Thus, if it was competent to impeach Hedrick by asking him if he had not been paid anything for the injuries suffered by himself, and he answeerd "No," it would be proper for the opposing party to develop the whole transaction by asking him if he had been promised anything.

For the error in giving instructions as indicated in the opinion, the judgment will be reversed, and the cause remanded for a new trial.