WILLIAMS *v.* STATE.

Opinion delivered December 12, 1927.

1. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—In a prosecution under Crawford & Moses' Dig., § 2527, for cutting a barbed wire fence, questions propounded to a witness for the State on cross-examination whether it was not customary for her to drive around with the prosecuting witness while his wife was at home, and whether they had been caught in a compromising attitude, *held* proper as throwing light on the credibility of witness.

2. CRIMINAL LAW—HARMLESS ERROR.—Judgments in criminal prosecutions will not be reversed by the Supreme Court, except for errors prejudicial to the rights of defendant.

3. WITNESSES—CROSS-EXAMINATION AS TO COLLATERAL MATTER.— Where a State's witness was questioned on a cross-examination as to whether it was customary for her to drive with the prosecuting witness while his wife was at home, and whether she was caught in a compromising attitude with him, a negative answer by the witness would be binding on defendant and would have ended the matter.

4. WITNESSES—CROSS-EXAMINATION AS TO COLLATERAL MATTER.—The object of a cross-examination of a State's witness in a collateral matter is to enable the jury to comprehend just what sort of a person they are called upon to believe; but because the character of the witness is collateral to the main issue, which is the guilt or innocence of defendant, he is bound by the witness' answer as to such collateral issue.

5. CRIMINAL LAW—PREJUDICIAL ERROR.—Where a question addressed to the State's witness on cross-examination as to her relation with the prosecuting witness was excluded, and the record did not show what the answer of the witness would have been, the

Supreme Court cannot determine whether any prejudicial error was committed.

6. CRIMINAL LAW—EXCLUSION OF EVIDENCE—PREJUDICE.—Where the record does not show what the answer of a witness to a question would have been, exclusion of such evidence is not ground for reversal of judgment.

7. CRIMINAL LAW—INSTRUCTION AS TO REASONABLE DOUBT.—Where the defendant in a criminal prosecution desired specific instruction on the question of reasonable doubt, he should have requested it.

8. CRIMINAL LAW—INSTRUCTIONS AS TO REASONABLE DOUBT.—In a prosecution for maliciously cutting a barbed wire fence, an instruction to convict if the testimony showed that the defendant cut the fence beyond a reasonable doubt, an instruction on the presumption of innocence defining reasonable doubt, sufficiently covered the requested instruction to acquit if not proved guilty beyond a reasonable doubt.

9. CRIMINAL LAW—IMPROPER REMARKS OF COURT.—In a prosecution under Crawford & Moses' Dig., § 2527, for maliciously cutting a barbed wire fence, where a question addressed to a State's witness on cross-examination as to her improper relations with the prosecuting witness, was excluded, remarks of the court to witness, "Your character is not on trial here; we all know you have a good character," was reversible error, as invading the province of the jury and violating Const., art. 7, § 23, expressly prohibiting the judge from charging the jury with regard to matters of fact.

10. CRIMINAL LAW—PREJUDICIAL EFFECT OF COURT'S REMARKS.—Where questions on cross-examination to a State's witness concerning specific acts of immoral conduct were excluded, the prejudicial effect of remarks of the court that the witness was of good character, invading the province of the jury, *held* not cured by an instruction that the jury were the sole judges of the credibility of witnesses and of the weight to be given their testimony, where the court did not withdraw its remarks nor instruct the jury not to consider same.

Appeal from Logan Circuit Court, Southern District; *J. O. Kincannon,* Judge; affirmed.

*W. L. Kincannon, John P. Roberts* and *Cochran & Arnett,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HART, C. J. Oscar Williams prosecutes this appeal to reverse a judgment of conviction against him for willfully and maliciously cutting a barbed wire fence belong-

ing to Frank McKinzie, in the Southern District of Logan County, Arkansas, in violation of § 2527 of Crawford & Moses' Digest.

The evidence for the State tended to establish the guilt of the defendant, and the evidence for the defendant tended to show that he was not guilty. Inasmuch as the evidence for the State was legally sufficient to warrant a verdict of guilty, and as the defendant does not ask for a reversal of the judgment and sentence of conviction on the ground that the evidence was not legally sufficient to warrant a verdict of guilty, we need not abstract the evidence in the case.

The main ground relied upon for a reversal of the judgment is that the court erred in refusing to permit Lizzie Williams, a witness for the State, to be asked certain questions on cross-examination. Lizzie Williams is a sister to the wife of Frank McKinzie, the prosecuting witness, and a sister of Oscar Williams, the defendant. She lived in the house with Frank McKinzie and her sister since their marriage for about thirty years. Bad feeling had existed between the family of the prosecuting witness and the family of the defendant. She was out watching, and saw the defendant cut the fence on the night in question. She went to the house and reported to her brother-in-law, and they both went down and saw the defendant cutting the fence. Several shots were exchanged betwen Frank McKinzie and Lizzie Williams on the one hand and Oscar Williams on the other. On cross-examination of Lizzie Williams, we copy from the record the following:

"Q. Isn't it customary for you and Frank McKinzie to drive around in his car and leave his wife at home? Mr. Evans: We object. The court: We are not going into that. Witness: If they are going to try my character, I want to get a lawyer. The court: Your character is not on trial here; we all know you have a good character, Miss Williams. Mr. Roberts: We object to the remark of the court. The court: Save your exceptions. Mr. Roberts: We except. Q. Didn't

Oscar Williams catch you and Frank McKinzie in a compromising attitude about two weeks ago? Mr. Wilson: We object. Witness: I want a lawyer, if they are going to try my character. The court: We are not going into that, Miss Williams, that is not competent here. We know you have a good character. Mr. Roberts: We save our exceptions. Q. You did leave your mother and father and went to Frank McKinzie's house and have been there ever since? A. Yes sir."

At the outset it may be stated that the questions asked the witness on cross-examination by counsel for the defendant were proper under *Hughes* v. *State,* 70 Ark. 420, 68 S. W. 676; and *Martin* v. *State,* 161 Ark. 177, 255 S. W. 1094. In the Martin case, the defendant assigned as error the ruling of the court in allowing a witness for the defendant to be asked, on cross-examination, whether or not she had, late on the night that the alleged crime was committed, been out riding with a man in a stolen car. The witness admitted that she was out riding that night in the car at a very late hour, when there was a collision with another car, and that the man who was driving the car was arrested for speeding. The court said that the testimony drawn out on cross-examination was competent for the purpose of throwing light on the credibility of the witness.

In the Hughes case the question propounded to the prosecuting witness was: "Do you ever go over to the levee camp and sit around there with the negroes?" The court said that the question was proper, and should have been allowed. The reason was that, if she had answered in the affirmative, the answer would have had some tendency to reflect her record for truth and morality, and thus her credibility. The court said that cross-examination is a means of sifting the testimony of a witness, and is especially important to the defendant in a case of this kind, and should not be denied unless there is a clear abuse of the right. It will be noted that in the Hughes case the record does not show what the answer of the witness would have been, or that the judg-

ment was reversed on the ground that there had been an abuse of discretion in interfering with the right of the defendant to cross-examine a witness for the State. The case was reversed on other grounds. In this connection it may be stated, however, that it is a settled rule of this court not to reverse judgments except for errors that are prejudicial to the rights of the defendant. *Perkins* v. *State*, 168 Ark. 710, 271 S. W. 326; and *Middleton* v. *State*, 162 Ark. 530, 258 S. W. 995. Now, if Miss Williams had answered the question copied above in the negative, the defendant would have been bound by her answer, and that would have ended the matter. The object of cross-examination in a collateral matter is to enable the jury to comprehend just what sort of a person they are called upon to believe, but, because the character of the witness is collateral to the main issue, which is the guilt or innocence of the defendant, the latter is bound by the answer of a witness as to a collateral issue. *McAlister* v. *State*, 99 Ark. 604, 139 S. W. 684; *Perkins* v. *State*, 168 Ark. 710, 271 S. W. 326; and *Smith* v. *State*, 172 Ark. 156, 287 S. W. 1026.

So it will be seen that, if Miss Williams had answered the question in the negative, this would have ended the matter. If she had answered it in the affirmative, the answer should have been allowed to go to the jury for what they considered it worth as affecting her credibility. She did not answer it at all, and a majority of the court are of the opinion that this brings the case within the general rule that, where evidence is ruled out as being incompetent, there must be set out in the record what the answer of the witness would have been. Otherwise the court would not know whether or not there had been any prejudicial error committed. It is only where a witness is rejected on the ground of incompetency that it is to be presumed that the witness would have been rejected, no matter how material the evidence might have been. *Rickerstricker* v. *State*, 31 Ark. 207.

Where the record does not show what the answer of a witness to a question would have been, this court has

repeatedly held that exclusion of evidence is not ground for reversal of the judgment. *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, 164 S. W. 720; *Battle* v. *Guttrey,* 137 Ark. 228, 208 S. W. 289; *Johnson* v. *Mo. Pac. Rd. Co.,* 167 Ark. 660, 269 S. W. 67; and *Smith* v. *State,* 172 Ark. 156, 287 S. W. 1026.

The court is of the opinion that the record does not present an instance where the testimony of the witness was excluded on the ground of incompetency, but merely where the answer to a single question was excluded; and we think that it comes within the rule that, in order to show prejudice, the record ought to show what the answer of the witness would have been to the question. In short, before any prejudice would result from the failure to allow the witness to answer the question, counsel should have informed the court what he expected the answer of the witness to be. We cannot know whether the witness would have answered "Yes" or "No" to the question.

But it is insisted that the remarks of the court in connection with its ruling on the matter amounted to a statement to the jury that the witness was of good character. We have copied above the whole of the record on this point, and a majority of the court are of the opinion that the remarks of the court, under the circumstances, did not amount to an expression of opinion to the jury as to the credibility of the witness. It amounted to nothing more than telling the witness that her character was not the main issue in the case, and that it would not be necessary for her to have a lawyer to advise her whether or not she should answer a question as tending to incriminate herself. The character of the witness for morality was presumed to be good until attacked in some manner. The jury was presumed to be composed of men of common sense, and would not be misled by a remark made by the court to the witness which, under the circumstances, we do not think was an attempt to express an opinion to the jury as to the general credibility of the witness as viewed or characterized by the court.

In this connection it may be said that the court gave to the jury specific and definite instructions, telling them that they were the sole judges of the credibility of the witness and the weight to be given to their testimony. A majority of us think that no prejudice resulted from what we have copied in the record on this point, because the court was explaining to the witness that it was not necessary for her to have a lawyer on a collateral issue. If the record had contained a statement to the effect that counsel for the defendant had expected the witness to answer in the affirmative, then the result would be different, but we cannot know from the state of the record whether she would have answered "Yes" or "No," and if she had answered no it would have ended the matter. We cannot go into the realms of speculation or conjecture as to what her answer might have been, and if the defendant expected it to be "Yes," his counsel should have, in a spirit of candor to the court, so stated, and had the expected answer placed in the record. Not having done so, we do not think any prejudice resulted to the rights of the defendant.

The next assignment of error relied upon for a reversal of the judgment is that the court failed to instruct the jury that, if the defendant was not proved guilty beyond a reasonable doubt, they should find him not guilty. If the defendant wished a specific instruction on the question of reasonable doubt, he should have asked for it. We think the instructions given by the court fully submitted that question to the jury. In instruction No. 3 the jury was specifically told that, if it should find from the testimony beyond a reasonable doubt that the defendant, at the time and place mentioned in the indictment, willfully and maliciously cut the barbed wire fence of Frank McKinzie, it should find the defendant guilty. In the succeeding instruction the jury was fully instructed upon the presumption of innocence in favor of the defendant and told that this presumption protects him from conviction until his guilt is established to the satisfaction of the jury beyond a reason-

able doubt. Continuing, the court, in the same instruction, fully and fairly defined the term "reasonable doubt." In instruction No. 5 the jury was fully and fairly instructed upon the credibility of witnesses and the weight to be given to their testimony.

Error is also assigned in the motion for a new trial upon certain remarks made by the special counsel for the State, in his argument to the jury, but this assignment of error has been abandoned by counsel for the defendant in their brief. Moreover, we are of the opinion that, when the remarks of special counsel for the State are considered in the light of the evidence introduced, they constitute no more than what was considered a reasonable deduction to be drawn from the evidence.

It follows that the judgment should be affirmed.

Justices WOOD and SMITH dissent because they think the remark of the judge as to the reputation of the witness was erroneous and prejudicial.

WOOD, J., (on rehearing). The facts are fully stated in the original opinion. It will be seen that the testimony of Lizzie Williams was exceedingly prejudicial to the appellant. She positively identified the appellant as the one who was cutting the fence of McKinzie on the night alleged. According to her testimony, if believed by the jury, the appellant was unquestionably guilty. The appellant therefore had the right on cross-examination to attack the credibility of the witness by proving specific acts of immoral conduct on her part. *Lockett* v. *State,* 145 Ark. 415, 224 S. W. 952; *Hollingsworth* v. *State,* 53 Ark. 387, 14 S. W. 41; *Jordan* v. *State,* 141 Ark. 504, 217 S. W. 788; *Kiles* v. *State,* 143 Ark. 409, 220 S. W. 458; *Martin* v. *State,* 161 Ark. 177, 255 S. W. 1094; *Sweeney* v. *State,* 161 Ark. 278, 256 S. W. 73.

As set forth in the original opinion, counsel for the appellant asked Lizzie Williams on cross-examination the following question: "Isn't it customary for you and Frank McKinzie to drive around in his car and leave his wife at home?" Counsel for appellant objected, and the court announced, "We are not going into that." The

witness then said: "If they are going to try my character, I want to get a lawyer." Thereupon the court further remarked: "Your character is not on trial here. We all know you have a good character, Miss Williams." Counsel for the appellant objected to the remark of the court, and duly saved his exceptions to such remark. Counsel for appellant then further asked Miss Williams: "Didn't Oscar Williams catch you and Frank McKinzie in a compromising attitude about two weeks ago?" Counsel for the State objected, and witness again said: "I want a lawyer if they are going to try my character." Thereupon the court remarked: "We are not going into that, Miss Williams; that is not competent here—we know you have a good character." Appellant duly objected, and excepted to the remarks of the court.

A majority of the court have concluded on rehearing that the remarks of the court in ruling on the objection by the State to the cross-examination of the witness invaded the province of the jury and were in violation of art. 7, § 23, of the Constitution, which expressly provides that judges shall not charge juries with regard to matters of fact. The court, it will be observed from the record, did not permit counsel for the appellant on cross-examination to go into the question as to whether Miss Williams was of good moral character, but the court instead assumed, and stated, as a fact, in the presence of the jury, that the witness' character was not on trial, and that all knew she had a good character. It is difficult to conceive how any stronger language could be used to express the fact that the witness, Miss Williams, was of good character than that used by the court. The language is susceptible of no other construction than that not only the presiding judge knew that the witness was of good character, but that all who were present knew the same fact.

In *Sharp* v. *State*, 51 Ark. 147, 155, 10 S. W. 228, 231, 14 Am. St. Rep. 27, a leading case in our reports, Judge BATTLE, speaking for the court, uses the following language: "In all trials the judge should preside with

impartiality. In jury trials especially he ought to be cautious and circumspect in his language and conduct before the jury. He should not express or intimate an opinion as to the credibility of a witness or as to controverted facts." See also *Jones* v. *State,* 166 Ark. 290, 265 S. W. 974; *Railey* v. *State,* 170 Ark. 979, 282 S. W. 5. The above language of Judge BATTLE is quoted literally in 26 R. C. L., page 1027, § 28, where many cases to the same effect in other jurisdictions are cited in notes to the section. The learned Justice, with his usual painstaking research, cited and quoted from several cases to support the holding of the court, and from *McMinn* v. *Whelan,* 27 Cal. 300, as follows: "From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other hand may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other. We regret the necessity for an expression of our disapproval of the irregularity of which complaint is made, and though we do not impugn the expression as designed to aid the side of the plaintiff, we may say, we should not hesitate to reverse the judgment because of it, if the same depended in any material degree upon the testimony of the witness whose character and standing was thus indorsed." The language of the trial judge in the California case was to the effect that the witness, who was being cross-examined, "was a woman of respectability." The above quotation from the California Supreme Court is therefore especially pertinent here, because the trial judge in the case at bar used even stronger language in saying, "We all know that you have a good character, Miss Williams."

In 16 C. J., p. 832, Mr. Clark, the author of the article therein on Criminal Law, says: "It is also

improper for the trial judge to intimate that the witnesses for the prosecution are credible, or to hint that those for the defense are not credible"; and at page 834 he further says: "The remarks or conduct of the judge during the trial indicating his opinion as to the credibility or lack of credibility of a witness or of the weight of any evidence he may give, constitutes error." Numerous cases are cited in notes to support these texts.

Under the above authorities it occurs to the majority of the court that it was manifest error and necessarily prejudicial to the appellant for the learned trial judge to declare as a fact that one of the material witnesses for the State was of good character. We said in the original opinion that the questions asked the witness on cross-examination by counsel for the defendant were proper under *Hughes* v. *State,* 70 Ark. 420, 68 S. W. 676, and *Martin* v. *State,* 161 Ark. 177, 255 S. W. 1074. Such being the case, the court should have allowed the witness to answer the questions without comment, and should have given the jury an opportunity to determine from her answers as to whether or not she was a credible witness, instead of declaring in advance of her answers that she was of good character. If the witness had answered the questions in the affirmative (at least the last one) her answers would have proved conclusively that she was a woman of immoral character, and even if she had answered in the negative, the issue as to the credibility of the witness was still for the jury; and it was the jury's sole function to determine that issue. But, under the circumstances disclosed, the remarks of the court were tantamount to saying to the jury, "Miss Williams is a woman of good character and therefore a credible witness, and you are not at liberty to disbelieve her testimony." The prejudicial effect of such remarks of the trial court was not cured by telling the jury that they were the sole judges of the credibility of the witnesses and the weight to be given their testimony, because the court had already declared that she was a woman of good character, and therefore a credible witness, and the court

did not, while instructing the jury, withdraw his previous remarks in their presence that "Miss Williams was a woman of good character," and did not instruct the jury that these remarks could not be considered by them. Therefore the prejudicial effect of such remarks was never removed from the minds of the jury.

Because of the error in the improper remarks of the trial court the judgment must be reversed, and the cause will be remanded for a new trial.

HART, C. J., and KIRBY, J., dissent.