JUTSON AND WINTERS v. STATE.

4484                                209 S. W. 2d 681

Opinion delivered March 29, 1948.

194

*Hugh M. Bland,* for appellants.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellants, Eddie Jutson and Oma Winters, were charged by information in the circuit court with the crime of assault with intent to kill, alleged to have been committed upon Halton Rust. On the trial of the case before a jury appellants were convicted of an aggravated assault and their punishment fixed at a fine of $1,000 and imprisonment in the county jail for one year.

Appellant, Oma Winters, is the wife of Charlie Winters, who operates a tire shop in the city of Fort Smith, Arkansas. The parties had been separated for some time prior to the transactions involved herein. Halton Rust had been employed at the tire shop for 14 years and resided with his family at North 5th Street in Fort Smith.

Mr. and Mrs. Rust testified that they were sleeping in the rear of their home on the night of August 19, 1947, when they were awakened by appellant, Eddie Jutson, who informed Mr. Rust that Charlie Winters was outside and wanted to see him. Rust dressed and walked with Jutson to a car parked in front of the Rust home. Appellant, Oma Winters, was in the front seat of the car and the back door was open. Jutson told Rust to get in the car and when he refused, Jutson drew a .45 caliber automatic pistol from his pocket and fired four shots at Rust while the latter was "dodging and ducking" and before he grabbed the gun. In the scuffle that ensued, Rust got hold of the gun and fired the remaining three shots in the air and the pistol then dropped to the ground. While Jutson and Rust were wrestling on the ground, appellant, Oma Winters, picked up the gun and struck

Rust with it about the head and face. Appellants then got in the car and drove away.

Two witnesses who lived nearby testified about hearing the shooting and of bullets entering their homes. A physician who attended Rust described the wounds on his head and face and a powder burn on his finger.

The mother of Charlie Winters, husband of appellant, Oma Winters, testified that her son was living with her at the time of the difficulty; that shortly before 10 p. m. on the night in question appellant, Eddie Jutson, came to her home and inquired as to the whereabouts of Charlie Winters; that Jutson had a pistol in his hand and she informed him that her son was out of town; and that she saw appellant, Oma Winters, waiting in her car for Jutson when he left the house.

Oma Winters testified that all the household goods were taken from her home on Towson Avenue on the night of August 17, and that she had concluded that her husband and Halton Rust were the guilty parties. The tire shop and the home of her mother-in-law had been searched on warrants sworn out by her, but the property had not been found. She stated that the purpose of the visit to the home of Halton Rust was to ask him about the property.

Both appellants testified that, when Jutson and Rust came to Oma Winter's car, Jutson opened the front door and Rust grabbed the pistol which was lying on the front seat. In the struggle that followed between Jutson and Rust for possession of the gun, several shots were fired and Oma Winters finally wrenched the gun from the hand of Rust. They also testified that the first shots were fired by Rust and that neither of them shot at Rust nor struck him with the gun. Jutson admitted that, in response to an inquiry by Rust, he gave a fictitious name and falsely represented to Rust that his employer, Charlie Winters, was in the car and wanted to talk to him. In this connection he testified, "I knew that it wouldn't do, if I told him Mrs. Winters was out there."

Appellants do not urge the insufficiency of the evidence to support the conviction for aggravated assault.

However, it is contended that the trial court erred in the admission of incompetent and prejudicial testimony entitling appellants to either a new trial or a material reduction of the punishment, which they insist is excessive.

Over the objections of appellants, the State was permitted to cross-examine appellant, Jutson, concerning his association with Oma Winters prior to the commission of the alleged offense. Jutson testified that he had known the co-defendant about two years and that they had made extended trips to California, Texas and Oklahoma in her automobile prior to August, 1947. It is argued that this evidence was incompetent and resulted in the conviction of appellants for their indiscretions rather than the offense with which they were actually charged.

We think this evidence was competent. This court has repeatedly held that it is proper to interrogate a defendant, or other witness, on cross-examination, touching his recent residence, occupation and associations, as affecting his credibility as a witness. *Hollingsworth* v. *State,* 53 Ark. 387, 14 S. W. 41; *Hughes* v. *State,* 70 Ark. 420, 68 S. W. 676; *McAlister* v. *State,* 99 Ark. 604, 139 S. W. 684; *Sweeney* v. *State,* 161 Ark. 278, 256 S. W. 73.

Cases cited by appellants in support of their contention that the evidence is prejudicial do not involve the admissibility of evidence produced on cross-examination of a witness, but deal with a situation where independent testimony of defendant's associations with third parties is offered by the State to impeach the character of the accused. Typical of such cases is *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398, where it was held (Headnote 2) : "While accused, on his cross-examination, could be asked as to his recent residence, occupation and associations, as affecting his credibility, his answers as to these collateral matters, whether true or false, concluded inquiry, and independent testimony on the subject of accused's associates was inadmissible, where there was no attempt to prove a conspiracy between himself and such persons."

This distinction between independent testimony offered by the State in its testimony in chief and the

cross-examination of defendant was also recognized in the case of *Ware* v. *State,* 91 Ark. 555, 121 S. W. 927, upon which appellants also rely. Speaking of the testimony of the defendant in that case, the court said: "As a witness in the cause, he could have been cross-examined; and upon his cross-examination, like any other witness, he could have been asked as to specific acts for the purpose of discrediting his testimony as a witness." In *Hollingsworth* v. *State, supra,* the court said: "The right to impair the evidence of a witness by cross-examination must not be confounded with the right to impeach a witness by evidence introduced by the opposite party. The former may be exercised within a more extended range than the latter." The State did not attempt to impeach the character of appellants by independent testimony and the trial court instructed the jury that they should only consider testimony of their prior association, which was adduced upon cross-examination, as affecting credibility. The testimony was relevant and competent for this purpose.

It is also insisted that the testimony of Mrs. Charlie Winters, mother-in-law of Oma Winters, concerning the visit of appellants to her home shortly before the alleged assault upon Rust was immaterial and prejudicial to appellants. Evidence of the relations existing between the accused and an accomplice, or co-defendant, prior to the crime is generally held to be admissible by the courts. 22 C. J. S. Criminal Law, § 608. Appellants were charged jointly and it is the theory of the State that they were acting in concert in the assault upon Rust. Evidence of their joint actions and association immediately prior to the alleged assault upon Rust was admissible for this purpose.

On cross-examination of appellant, Oma Winters, the prosecuting attorney asked the witness if it were not a fact that she and Jutson were jointly indicted for a felony known as adultery in the State of Oklahoma. The objection of appellants to this question was promptly sustained by the trial court and the jury were admonished not to consider the question in passing on the guilt or innocence of appellants. The question was im-

proper, and if the witness had been permitted to answer, reversible error might have resulted. *Johnson v. State,* 161 Ark. 111, 255 S. W. 571; *Wray v. State,* 167 Ark. 54, 266 S. W. 939. We think the action of the trial court removed any prejudice resulting from the unanswered question.

Appellants also say the punishment is excessive. It was the peculiar province of the jury to weigh the testimony of the witnesses. If the jury believed the testimony of witnesses for the State, appellants were guilty of a violent, unprovoked and inexcusable attack upon the prosecuting witness with a deadly weapon. While the punishment inflicted is severe, it is authorized by the statute (Pope's Digest, § 2960) and this court will not, under the circumstances, reduce the punishment assessed by the jury. *Hall v. State,* 113 Ark. 454, 168 S. W. 1122; *Daugherty v. State,* 130 Ark. 333, 197 S. W. 576; *Wagner v. State,* 183 Ark. 1153, 37 S. W. 2d 86.

The judgment is affirmed.