## STATE v. ROBERT LEE CRISLER.

188 N. W. (2d) 768.

June 25, 1971—No. 41997.

*C. Paul Jones*, State Public Defender, and *Roberta K. Levy* and *Doris O. Huspeni*, Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

NELSON, JUSTICE.

Appeal from a judgment of the Hennepin County District Court entered November 8, 1968, after trial to the court without a jury, convicting defendant-appellant, Robert Lee Crisler, of aggravated robbery in violation of Minn. St. 609.245 and 609.05.

At about 3 a. m. August 19, 1968, the Super America Service Station located at 137 East Franklin Avenue in Minneapolis was robbed by two armed men. The only employee present in the station was the night attendant, Michael Johnson, who immediately notified the Minneapolis police of the robbery. A police car on routine patrol in the near vicinity of the robbery received a report over the police radio of the holdup a few minutes after it had occurred. Following the report of the holdup came a description of the robbers—two armed Negro men in their early twenties, wearing brown clothing and bandannas on their heads. Almost immediately after receiving this message, the officers in the police car saw a car approaching them from the direction of the service station. As the car passed, they shined their spotlight into the car and observed a Negro male approximately 20 years of age, wearing a brownish-gold turtleneck shirt. The officers decided to follow the car. After they had done so for several blocks, the car driver stopped and pulled over. As the police pulled up behind the car, they saw two other individuals sit up in the back seat. After police reinforcements arrived, the occupants of the car were removed and items taken from the Super America station, along with two revolvers and two bandannas, were discovered in the back seat of the car. Defendant and the other man in the back seat with him, Victor Blakeley, and the driver of the car, Earl Williams, a juvenile, were arrested.

Defendant and Blakeley were subsequently placed in a police lineup and were identified by the Super America station attendant as the two men who had committed the robbery.

At trial, the station attendant again identified defendant as one of the men who had committed the robbery. The attendant described in detail the clothing defendant wore and said that he wore sunglasses and had a bandanna wrapped turban-fashion around his head. He also identified a bandanna and a .32-caliber revolver taken from the car in which defendant was riding at the time of his arrest as items he observed in the possession of defendant at the time of the robbery. He further identified a number of Super America credit cards and two cash register drawers found by police in the car as items taken in the crime.

The 17-year-old driver of the car, Earl Williams, was also called to testify as a state's witness. Williams, in a written statement given to a juvenile officer at the time of the arrest, had claimed that he had no knowledge of the robbery of the service station. However, upon questioning by the assistant county attorney, and after having been advised by the trial court that he need not give any answers which would tend to incriminate him, Williams, contrary to his statement, testified that he himself and Blakeley were the persons involved in the service station robbery and that defendant had not been involved. The assistant county attorney claimed surprise on the basis of Williams' previous statement and sought leave to impeach him. At the request of defense counsel, Williams was admonished by the court as to the possible penalties for perjury. Later, in chambers, Williams inquired of the trial judge as to his right to remain silent, but again stated that his written statement had been false. He also asked the trial judge if he could have the opportunity at a future time "to discuss with you on further things," to which the court assented. In open court Williams continued to repudiate his signed statement, insisting that it was he, not defendant, who had committed the crime.

However, the next day the trial court announced that Wil-

liams had sought him out to "explain to me that there were some misunderstandings that he wished to clear up in his testimony given yesterday." Williams then testified that his testimony given the day before was an attempt to protect defendant, his friend, and that in truth Williams was not a participant in the robbery. In response to inquiry from defense counsel as well as the prosecution, Williams stated that he was giving this testimony voluntarily.

The court found defendant guilty of aggravated robbery, observing that the testimony of Johnson, the service station attendant, was very impressive with regard to identification of defendant as one of the robbers and the events occurring at the time of the robbery. The court summed up its view of the evidence as follows:

"* * * Really, as a practical matter, this case has as little doubt as any that I heard in some time.

"The description given by the victim of the robbery was far more complete and better recollected than one usually hears. The police work was so timely that it's difficult to see what could have intervened between the time of the robbery and the time of the apprehension. The goods are all found immediately proximate to the defendant and his companions.

"Gentlemen, this court is really as a practical matter in no relevant doubt whatsoever as to the guilt of Mr. Crisler."

The following issues are raised on this appeal: (1) Was the conduct of the trial judge in dealing with witness Earl Williams prejudicial to defendant so as to deny defendant a fair and impartial trial? (2) Was the evidence at trial sufficient to justify a finding of guilty by the trial court?

■ Defendant raises as prejudicial error the trial court's admonishment of Earl Williams with respect to the crime of perjury and the court's "repeated threats of prosecution" directed at Williams after he had repudiated his prior written statement and had testified at trial that it was he, not defendant, who had committed the robbery. Defendant points out alleged specific

instances in the record of the trial court's attempts to influence a change in Williams' testimony and cites McNutt v. United States (8 Cir.) 267 F. 670; Rutherford v. United States (2 Cir.) 258 F. 855; and Watkins v. State, 222 Ark. 444, 261 S. W. (2d) 274, as authority that the trial judge's conduct was prejudicial.

In the McNutt case, a government witness, testifying in a prosecution against the defendant for carrying on the business of a retail liquor dealer without having paid a special tax, deviated from an earlier statement he had given to the prosecution. The trial judge, in the midst of the questioning of the witness, interjected himself into the dialogue and bluntly asked the witness if he knew what the punishment was for perjury. After more testimony from the witness, the trial judge instructed the district attorney to charge the witness with the crime of perjury. All of this took place in open court before a jury. The United States Court of Appeals reversed, stating (267 F. 673):

"* * * What was the natural and probable effect upon the witnesses and jurors in this case of the court's treatment of the witness Paine? Was it not to impress the former with the imminent danger to them of arrest for perjury, if they failed to answer questions as the prosecutor desired, and to indicate to the jury that the court thought little attention ought to be paid to evidence that did not tend to convict the defendant? Must it not have had the effect to have strongly impressed the jury with the view that the court was convinced of the guilt of the defendant?

"* * * While there is some conflict among the decisions, the great weight of authority is that the commitment for perjury of, or the direction to file an information for perjury against, the defendant or one of his witnesses in the presence of the jury during the trial of a criminal case against him, is a fatal error."

The Rutherford and Watkins cases present similar situations where the trial judge interjected himself into the examination of witnesses before a jury and admonished the witnesses to tell the truth or face contempt or perjury charges. On appeal the convictions in those cases were reversed, the respective courts

holding that the defendants did not have the temperate and impartial trials to which they were entitled.

The holdings in the above cases are proper under their own facts; however, they are not applicable to the case at bar. Here, the trial court was the finder of fact, not a jury. The trial court admonished Williams with the acquiescence of defense counsel and not sua sponte, as in the cases cited above. In the posture of this case, we think the trial court's informing Williams that perjury was a felony and that he might be liable for prosecution for the robbery, which he had just testified to committing, thereby completely repudiating his prior statement, did not constitute error, but was properly given to enlighten the witness as to the seriousness of his position. In chambers, the trial court further explained to Williams the import of repudiating his former statement. He did not threaten him but explained the possible consequences of the boy's confessing to the robbery. However, Williams went back into court and testified that he, not defendant, had robbed the service station. The next day Williams approached the trial court before proceedings had begun and claimed that he wished to recant his testimony of the previous day. His reason for giving the false statements was to protect defendant, who was his friend. He also claimed that he was not changing his testimony as a result of any threat, but voluntarily.

It is clear to us that no prejudice accrued to defendant by reason of the trial court's handling of the witness. The record reveals that the trial court conducted the entire matter sensibly and fairly, and that its action did not deny defendant a fair and. impartial trial. See, Patterson v. United States (5 Cir.) 413 F. (2d) 1001; Posey v. United States (5 Cir.) 416 F. (2d) 545.

■ Defendant also argues that the evidence in the case was insufficient to justify a finding of guilty. He contends that Earl Williams was shown by the evidence at trial to be the guilty party. The first of several "critical facts" that he cites is a conflict between a police radio description of the robber as wearing brown pants and an arresting officer's testimony that, at the

time of the arrest, defendant was wearing blue pants. A second fact concerns the question of who was wearing a brown shirt or jacket at the time of the robbery and later at the time of the arrest. Defendant contends that Williams wore the jacket when he committed the robbery and that defendant, in a gesture of selflessness, donned the jacket to protect his young friend as the police were closing in to make the arrest.

Another fact question raised pertained to the number of pairs of sunglasses found in the car at the time of the arrest. The robbers wore sunglasses when they held up the service station. When the police stopped Williams' car, only two pair were found therein. One pair was worn by Williams, and the other pair was found on the back seat of the car. Defendant contends that Williams was wearing the sunglasses when he committed the robbery along with Blakeley, who was wearing the other pair. Finally, defendant urges error in not having had Williams placed in the lineup in which defendant and Blakeley were identified as the individuals who robbed the service station.

There is no merit to defendant's contention that Williams, not defendant, was one of the robbers. The record sustains none of defendant's "critical facts." Defendant, even though he wore a bandanna tied around the top of his head and sunglasses, was positively identified, at the police lineup and again at trial, by the station attendant, Johnson, as one of the robbers. Johnson testified at trial that there was no doubt in his mind that defendant was one of the men who had robbed him. He testified that defendant stood next to him in the well-lighted service station office, jabbed him in the ribs with a pistol several times, and that defendant spoke to him, demanding money.

We think the variance in the color of the robber's pants given in the police broadcast and the color he was actually wearing quite insubstantial when measured against Johnson's positive identification of defendant. Also, the speculative assertion that defendant put on Williams' brown shirt or jacket just as the three occupants of Williams' car were about to be arrested

strains credulity. We find it difficult to determine at what stage of the robbers' flight from the service station and their arrest Williams, who was driving the get-away car, would have had an opportunity to remove the brown suede shirt and give it to defendant to put on. As for the number of pairs of sunglasses found in the get-away car, one of the arresting officers testified that when he searched defendant he thought defendant had a pair of sunglasses in his pocket. However, he stated in later testimony that he did not remember clearly whether or not defendant had sunglasses on his person. We think the question of whether there was a third pair of sunglasses which were worn by defendant and what may have happened to them of no moment in light of the record.

Similarly, the fact that Williams, who did not resemble defendant, was not placed in the lineup with defendant and Blakeley is not such a critical omission as to affect the determination of the trial court. We think the evidence established that defendant and Blakeley, when captured, were concealed in the back of the get-away car, surrounded by the spoils and instrumentalities of the robbery. Quick police work made any switching of clothing well-nigh impossible, as the time from the commission of the crime to the capture was measured in minutes. Positive identification of defendant and Blakeley at the lineup and at trial as the robbers by the service station attendant was clear and impressive. The testimony of Earl Williams played little or no part in establishing anything in this case except that Williams was willing to lie under oath for his friend.

The evidence is more than sufficient to establish defendant's guilt, and his conviction must therefore be affirmed.

Affirmed.