SUIT *v.* STATE.

4-8380                                              207 S. W. 2d 315

Opinion delivered December 22, 1947.

*Witt & Witt,* for appellant.

*Guy E. Williams,* Attorney General, *Oscar E. Ellis,* Assistant Attorney General, and *John S. Freemen,* for appellee.

Ed. F. McFADDIN, Justice. Appellants—W. M. Suit and H. C. Suit—seek to reverse a circuit court judgment against them for $1,000 on two forfeited bail bonds. On August 14, 1947, the Montgomery Circuit Court entered the judgment here involved, the germane portions of which recite:

"That on the 26th day of August, 1945, Bly Suit was indicted by the grand jury of Montgomery County, Arkansas, for child abandonment and . . . for wife abandonment; that on the 21st day of December, 1945, Bly Suit, W. M. Suit and H. C. Suit . . . executed two bonds of $500 . . . , conditioned that Bly Suit would appear in circuit court . . . , to answer said charges and would render himself amenable to the orders and process of said court and if convicted render himself in execution thereof; that . . . on the 6th day of August, 1946 . . . , defendant Bly Suit appeared in person and entered a plea of guilty to each of said indict-

ments and charges; that the court then and there pronounced sentence or judgment upon him, fixing his punishment at $500 and six months in jail; the court suspended the execution of said judgment, at this time, to give the defendant an opportunity to comply with an order made by the judge of the chancery court of Garland county previously made, and ordered defendant to remain under the present bond; that on December 11, 1946, the court revoked the suspension order made on the 6th of August, and ordered a warrant for the arrest of defendant who is still at large.

"This court entered an . . . order . . . , declaring a forfeiture on the bond executed by W. M. Suit and H. C. Suit, and ordered the clerk to issue his summons for their appearance in this court to show cause why a judgment against them on said bonds should not be rendered; defendants . . . filed an answer, and after argument of attorneys, and without the introduction of any evidence, but considering the case from the record as made above, the court finds that plaintiff should have judgment against the defendants W. M. Suit and H. C. Suit in the sum of $1,000 with interest, and that execution should issue upon said judgment.

"It is therefore, by the court considered, ordered and adjudged, that plaintiff have judgment. against the defendants and each of them in the sum of $1,000; that execution be issued . . . "

From that judgment there is this appeal.

I. *Absence of Motion for New Trial and Bill of Exceptions.* At the threshold of this appeal, the State points out that the transcript contains neither a motion for new trial nor a bill of exceptions, and therefore urges affirmance, citing these cases: *Eveland* v. *State*, 189 Ark. 517, 74 S. W. 2d 221; *Independence County* v. *Tomlinson*, 93 Ark. 382, 125 S. W. 423; *School District* v. *School District*, 64 Ark. 483, 43 S. W. 501; and *Good Samaritans* v. *Anderson*, 171 Ark. 1033, 287 S. W. 194.

But appellants contend that the judgment here involved shows all the facts, and that the alleged error on which they rely—subsequently to be discussed—appears on the face of the judgment: therefore—they urge—that neither a motion for new trial nor a bill of exceptions is necessary; and they cite *Ford* v. *State,* 100 Ark. 515, 140 S. W. 734*; *Burns* v. *Harrington,* 162 Ark. 162, 257 S. W. 729; *Buchanan* v. *Halpin,* 176 Ark. 822, 4 S. W. 2d 510.

*Ford* v. *State, supra,* was a bond forfeiture case, just as this one, and we there said: "Counsel for appellee urges that the appeal should be dismissed because no motion for a new trial, or bill of exceptions has been filed. Neither a motion for a new trial nor a bill of exceptions is necessary where the errors complained of do not grow out of the evidence or instructions, but appear from the record itself. *Independence County* v. *Tomlinson,* 93 Ark. 382, and 95 Ark. 565, 125 S. W. 423; *Norman* v. *Fife,* 61 Ark. 33, 31 Ark. 740; *Ward* v. *Carlton,* 26 Ark. 662." Language to the same effect may be found in each of the other cases cited by appellants. Since the question which appellants here urge is one that appears on the face of the judgment, we conclude that neither a motion for a new trial nor a bill of exceptions is necessary to present the question.

II. *Were Appellants, as Sureties, Discharged When the Defendant Was Sentenced?* That is the real question presented. The judgment, as previously copied, recites that the defendant Bly Suit appeared in court on August 6, 1946, and entered a plea of guilty, and "that the court then and there pronounced sentence or judgment upon him, fixing his punishment at $500 and six months in jail; the court suspended the execution of said judgment, at this time, . . . " The appellants claim that, when the court *pronounced sentence,* such act terminated all liability of the sureties on the bail bond, and that the suspension of the execution of sentence was a judicial leniency that did not and could not continue the

* In the Arkansas report this case is styled as above; in the Southwestern Reporter this case is styled *Phillips* v. *State,* since Phillips was the person who was indicted, and later failed to appear in court. The correct style is *Ford* v. *State.*

liability of the sureties on the bond; and they cite, *inter alia, Ford* v. *State, supra,* and *Richardson* v. *State,* 169 Ark. 167, 273 S. W. 367.

In *Ford* v. *State,* Ford and Pressly were sureties on the bail bond of Phillips, who appeared in court, and entered a plea of guilty. The court pronounced sentence, ''and upon motion of the defendant and leave of the court judgment was suspended'' until the next term of the court. At the said next term Phillips failed to appear, and the court forfeited the bail bond, and rendered judgment against Ford and Pressly as the sureties. On their appeal to this court, we said: ''Where a party is present in court and pleads guilty, and the sentence of the court is pronounced, he is no longer in the custody of the bail, but is in the custody of the proper officers of the law, and his sureties are thereby discharged by the operation of the law without a formal order to that effect. The reason is that the condition of the bond then will have been fully complied with.''

In *Richardson* v. *State, supra,* in speaking of the fact that the court had *pronounced sentence* in *Ford* v. *State,* we said: ''The effect of this proceeding was to take the defendant out of the custody of the bail and place him in the custody of the proper officers of the law.''

In short, we have made the *pronouncing of sentence* to be the act that releases the sureties on the bond. The statutory form of bail bond (§ 3765, Pope's Digest) is the same in the case at bar as in the cases of *Ford* v. *State, supra,* and *Richardson* v. *State, supra*; and we adhere to the holding that the pronouncing of sentence is the act terminating the liability of the sureties on the bail bond.

Appellee contends that there is one fact in the case at bar which distinguishes it from *Ford* v. *State*; and that fact is, that here the court specifically directed that the defendant should remain on his present bond. Appellee points to this language in the judgment, *supra*: '' . . . the court suspended the execution of said judgment at

this time . . . and ordered defendant to remain under the present bond.'' It is clear that the court, in suspending the enforcement of the sentence, attempted to keep the bail bond in full force. Was it within the power of the circuit court to so bind the sureties? This precise question has not been decided by our court under facts identical to those here; but other courts have passed on such a situation.

In *State* v. *Romaine,* 47 Okla. 138, 148 Pac. 79, the fact showed: that the defendant had appeared in court, and had received his sentence, and the court had allowed the defendant to remain at liberty for ten days on his original bond; and that during the ten-day interval Romaine had absconded. The State sought judgment against the sureties on the original bond; and under such facts the Supreme Court of Oklahoma held that, when Romaine was sentenced, he was no longer in custody of his bail, but in custody of the law, and that the bond was discharged by such sentence. We quote:

''Upon judgment being rendered and sentence passed, the custody of the defendant under the law passed from his bail to the proper officer, and the court was not at liberty to vary or enlarge the terms of their undertaking. The same conclusion was reached in somewhat similar circumstances in the following cases: *Ex parte Williams,* 114 Ala. 29, 22 South. 446; *McGarry* v. *State,* 37 Kan. 9, 14 Pac. 491; *Sowders et al.* v. *State,* 37 Kan. 209, 14 Pac. 865; *State* v. *Zimmerman,* 112 Iowa 5, 83 N. W. 720; *Miller* v. *State,* 158 Ala. 73, 48 South. 360, 20 L. R. A., N. S. 861; *Towns et al.* v. *Hale et al.,* 68 Mass. 199; *Roberts* v. *Gordon,* 86 Ga. 386, 12 S. E. 648.''

In *People* v. *Brow,* 253 Mich. 140, 234 N. W. 117, the facts showed that the court sentenced the defendant to prison, but delayed the imprisonment for a short period after sentence, directing that during such interval the original bail bond would remain in force. In the interval the defendant absconded, and the State sought to enforce a judgment against the sureties on the original bond.

The Supreme Court of Michigan denied the State's claim, saying:

"The defendants' (sureties') obligations under the conditions of this bond required them to have their principal in court until his case was finally determined. It was terminated when sentence was imposed. The court had no authority to continue the bond in force beyond that time without the consent of the sureties. They were not present when sentence was imposed, and did not consent. Therefore they were not bound by the order of continuance." It is interesting to note that, as persuasive to its conclusion, the Michigan court cited our own case of *Ford* v. *State, supra.*

It has been suggested that the trial court had the right during the trial to allow the defendant to stand on his bond, and that this same power of the trial court could extend to a situation like the one here. The vice in such argument lies in the fact that, although the statute (§ 3772, Pope's Digest) specifically states that the trial court may allow the defendant to remain on his bond during the trial, nevertheless, such statute does not provide that the trial court has such power after sentence has been pronounced.

Furthermore, it is insisted that the sureties *might* have been in court and *might* have consented to the defendant standing on his bond. But, in such event, the court should have taken a recognizance as provided by § 3770, Pope's Digest. The judgment does not recite that the sureties were in court; and this is not a suit on a recognizance, but a suit on the original bond. *Prima facie,* the trial court in this case attempted to extend the bond past the pronouncement of sentence. Our cases hold that the liability of the sureties on the bail bond is terminated when sentence is pronounced, and we adhere to that holding. In 20 A. L. R. 594 there is an annotation, "Bail: Stage of proceeding at which sureties are discharged in criminal case"; and it is there stated that the weight of authority is to the effect that the sureties are discharged when sentence is pronounced.

By Act 76 of 1923 (§ 4053, Pope's Digest) the Legislature enacted a law allowing the trial court to defer the passing of sentence. Under that act we held—in *Richardson* v. *State, supra,*—that the liability of the sureties on the bail bond continued until sentence was pronounced. Then, by Act 262 of 1945 the Legislature amended § 4053, Pope's Digest, and enacted a law requiring the trial court to pronounce sentence, but permitting the trial court to suspend the execution of the sentence. When this 1945 act was passed, the cases of *Ford* v. *State* and *Richardson* v. *State* had both been decided, each definitely holding that, when sentence was pronounced, the bail was released. So, if the Legislature had intended that the original bail bond could remain in force after the sentence had been pronounced, then the 1945 act should have so stated. In the absence of any such legislation, we must follow our cases, and hold that the liability of the sureties on the bail bond is ended when sentence is pronounced. A new bond or a recognizance could easily be taken.

The judgment of the circuit court is reversed, and the cause is remanded with directions to proceed in a manner not inconsistent with this opinion.