WATKINS, BROOMFIELD AND MATLOCK v. STATE.

4737                                          261 S. W. 2d 274

Opinion delivered October 12, 1953.

*Cole & Epperson* and *W. H. McClellan,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, J. On an indictment charging the crime of assault with intent to kill, appellants were convicted and the jury fixed Watkins' punishment at 2 years in the State Penitentiary, Matlock's at 1½ years, and Broomfield's at 1 year. This appeal followed.

At about 3 P. M., October 18, 1952, appellants, in Watkins' car, after first procuring, and drinking some whiskey, from Lee Hawkins, nephew of Oscar Hawkins, the prosecuting witness, drove to Oscar Hawkins' place and engaged in a dice game, which resulted in an argument and a quarrel between Watkins and Oscar Hawkins over the ownership of a quarter. The testimony as to what happened thereafter is somewhat conflicting, but, according to Oscar Hawkins, Watkins went to his car and got a knife, and to frighten him, Hawkins fired a pistol and struck the rear glass of Watkins' car. Watkins, in company with Broomfield and Matlock, decided to kill Hawkins and made admissions to the sheriff to that effect. After each of the appellants had procured a gun and ammunition, they drove toward a cafe owned by Anna Gregory and while en route, Oscar Hawkins passed in his car going in the opposite direction. He stopped his car and another argument arose. After this argument ended, Hawkins proceeded to Princeton where he picked up his brother and two girls. They then drove to Anna Gregory's cafe and just as they drove up (about 7 P. M.), defendants opened fire on Hawkins, Watkins using a shotgun and the other two defendants .22 rifles. Hawkins suffered several gunshot wounds in the encounter. It appears that he fired only one shot. Watkins admitted to the sheriff "I shot the windshield the first shot and then I got behind a tree and reloaded and shot again." Six empty shells were found where he was standing. Matlock admitted to the sheriff that he used a .22 automatic rifle during the affray and got behind a fence and fired toward Hawkins' car, which was about 25 yards

away. Broomfield told the sheriff that they planned to kill Hawkins and that while running away from the scene, shot one time. On the whole, the evidence was ample to support the jury's verdict as to all appellants.

The instructions appear to have covered the case, correctly, fully and fairly.

It appears from the record that each of the appellants was represented by a different attorney at the trial, and that two separate motions for new trial were filed, one on behalf of Broomfield and Matlock, containing seven assignments of alleged errors, and the other for Watkins containing twenty-one.

All of the appellants question the sufficiency of the evidence. As indicated, we hold that it was sufficient. They also challenge the action of the Court in consolidating the cases for trial. This contention is without merit.

"When two or more defendants are jointly indicted . . . for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court." (Ark. Stats. 1947, § 43-1802.) No abuse of discretion is shown here. *Nolen* v. *State*, 205 Ark. 103, 167 S. W. 2d 503.

Other alleged errors common to all of the appellants have been carefully noted and found to be without merit.

We would affirm the judgment as to all of the appellants but for the error presently considered, which relates to Watkins only, since this assignment of error was properly preserved in his separate motion for a new trial, but was not preserved in the motion of Broomfield and Matlock.

Under our long established rule, an error not preserved in the motion for a new trial cannot be considered by us on appeal, (*United Order of Good Samaritans* v. *Anderson*, 171 Ark. 1033, 287 S. W. 194; *State* v. *Neil*, 189 Ark. 324, 71 S. W. 2d 700; *Suit* v. *State*, 212 Ark. 584, 207 S. W. 2d 315).

The record reflects that while the attorney for the State was examining two Negro witnesses on behalf of

the State, Anna Gregory,—in the jury's presence,—and Shirley Mae Lambert,—in chambers,—the following occurred during the questioning of Anna Gregory: "Q. Do you remember talking with Sheriff Parham about this case? A. Yes, sir. Q. Do you remember telling the sheriff and do you remember saying in the Grand Jury room that you heard J. L. Watkins say he was going to kill a damned Hawkins? A. No, he didn't say 'a damn Hawkins.' I didn't say 'a damn Hawkins.' By the Court: Let me warn you whatever you said then they have it down word for word and you were under oath then and are under oath now, but if you tell the same things two different ways you are going to be guilty of perjury. You get yourself straight. By Witness: That is what I told first. He said the Hawkins had been bothering him. I said, 'Go out of here with that gun.' He said, 'They have been bothering me and if they bother me any more that night he was going to get one of them.' Q. You are sure about that? A. That's right. Q. Is that the same thing you said in your testimony before? By Mr. Epperson: We object to him impeaching his own witness. By the Court: If a hostile witness, I am going to let him."

Immediately following the above testimony, Shirley Mae Lambert was being questioned by the Prosecuting Attorney also as to her previous testimony before the Grand Jury. "Q. Do you remember testifying in there that you saw those three and all of them had guns? A. Yes, sir. By Mr. Epperson: We object to him impeaching his own witness. The objections being overruled, the defendants save exceptions."

At this point, the Court retired to chambers where the following proceedings occurred: "By the Court: Girl, you are indicating or hinting at perjury here. If there is any perjury I am going to instruct the Prosecuting Attorney to file an information against the one that swears a lie. Girl, all the Court wants is the truth. If you told one story in that Grand Jury room and you are telling another one here you are under oath both times and you are going to be prosecuted and if guilty you are going to be sent to the penitentiary. I am not asking you

to tell me anything here. I am just warning you, in the presence of the Prosecuting Attorney and the lawyers for the defense and the Court Reporter. If you told one story in that Grand Jury room under one state of facts and tell another one here I am going to tell the Prosecuting Attorney to file information.

"By Mr. Epperson: We object to the admonition of the Court and further ask the Court to also further advise the witness that she should tell the truth at the present time during the trial of this case regardless of any prior statement she has made, regardless of whether it would be contradictory. (Defendants save exceptions.)

"By the Court: I will tell her that but she will still be accountable for her testimony before the Grand Jury. They have got it written down, this same man took down everything you said in that Grand Jury room, every word of it, and is taking down what you are saying here. Has anyone talked to you about this case? By Witness: No, sir. By the Court: No lawyers have talked to you? By Witness: No, sir. By the Court: No defendants have talked to you? A. No, sir. By the Court: You tell the truth, regardless of what happened, but I am telling him to file an information if you don't, and don't hesitate about it."

The comments and admonition of the trial judge to Anna Gregory, in the jury's presence, when she was asked by State's counsel: "Q. Do you remember telling the Sheriff and do you remember saying in the Grand Jury room that you heard J. L. Watkins say he was going to kill a damned Hawkins? A. No, he didn't say 'a damn Hawkins.' I didn't say 'a damn Hawkins,' " and the Court's immediate admonition: "Let me warn you whatever you said then they have it down word for word and you were under oath then and you are under oath now, but if you tell the same things two different ways you are going to be guilty of perjury. You get yourself straight," indicating that he thought she was not telling the truth when coupled with the fact that immediately following Anna Gregory's testimony, Shirley Lambert was intro-

duced by the State and when she was also asked by the Prosecuting Attorney in the jury's presence as to her previous testimony before the Grand Jury, the Court suspended further questioning and Shirley was immediately taken into the Judge's chambers and in effect was told that she was also about to commit perjury and would commit perjury if she did not tell the same story before the Trial Jury as she had told before the Grand Jury, were prejudicial to the rights of appellants had proper objections been made and preserved in the motions for new trial.

We hold that the Trial Court went too far with this witness and that his admonition, threats of prosecution for perjury, and instructions to her in chambers, immediately following similar remarks (as indicated) to Anna Gregory before the jury, tended to intimidate her in testifying even though not said to her in the presence of the jury. She was not bound to testify exactly as she did before the Grand Jury. She had the right to change that testimony if it were not true and to testify as to the truth before the Trial Jury. The jury was entitled to the benefit of this witness' testimony given freely by her and without any intimidation by the trial judge and in an atmosphere free of threats or coercion. It was the jury's province to be the sole judge of whether such testimony was true or false.

"In all trials the judge should preside with impartiality. In jury trials especially, he ought to be cautious and circumspect in his language and conduct before the jury. He should not express or intimate any opinion as to the credibility of a witness or as to controverted facts. For the jury are the sole judges of fact and the credibility of witnesses; and the constitution expressly prohibits the judge from charging them as to the facts. The manifest object of this prohibition was to give to the parties to the trial the full benefit of the judgment of the jury, as to facts, unbiased and unaffected by the opinion of judges. Any expression or intimation of an opinion by the judge as to questions of fact or the credibility of witnesses necessary for them to decide in order for them

to render a verdict would tend to deprive one or more of the parties of the benefits guaranteed by the constitution, and would be a palpable violation of the organic law of the State." *Sharp* v. *State*, 51 Ark. 147, 10 S. W. 228, 14 Am. St. Rep. 27.

"It was wholly within the province of the jury to say whether the testimony of the witness as disclosed by his examination at the trial was true or false." *Crosby* v. *State*, 154 Ark. 20, 241 S. W. 380.

"The remarks or conduct of the judge during the trial indicating his opinion as to the credibility or lack of credibility of a witness or of the weight of any evidence he may give, constitutes error." *Williams* v. *State*, 175 Ark. 752, 2 S. W. 2d 36.

For the error indicated, the judgment is reversed and the cause remanded for a new trial as to appellant, J. L. Watkins. The judgment is affirmed as to Hayward Broomfield and Richard Matlock.

ED. F. McFADDIN, Justice (dissenting). The majority is correct in affirming as to the appellants, Broomfield and Matlock, since they failed to have any meritorious assignment in their motion for new trial; and an appellant can urge as alleged errors in the trial only the assignments contained in the motion for new trial. *State* v. *Neil*, 189 Ark. 324, 71 S. W. 2d 700; *Suit* v. *State*, 212 Ark. 584, 207 S. W. 2d 315.

And by the same token, I submit that the majority should also affirm as to the appellant, Watkins, since his motion for new trial failed to assign the point that the majority is seizing upon and claiming to have been error. To elucidate:

(1) *As Regards Anna Gregory.* Watkins' only assignment of error as to anything that occurred during the testimony of Anna Gregory is contained in Assignment No. 8 in Watkins' motion for new trial, and is in this language:

"The Court erred in permitting the Prosecuting Attorney to impeach Anna Gregory, his own witness, over the objections and exceptions of the defendant."

The majority opinion copies what occurred during the testimony of Anna Gregory, which concludes with the Court's remarks: "If a hostile witness, I am going to let him." Now the law is well established that a hostile witness can be impeached. *Shands* v. *State,* 118 Ark. 460, 177 S. W. 18; *Derrick* v. *State,* 92 Ark. 237, 122 S. W. 506; and other cases collected in West's Ark. Digest, "Witnesses", § 380 (5). So the Court was correct in such statement, and Watkins' assignment No. 8 in his motion for new trial was and is without merit.

The point I emphasize is, that Watkins made no *objection,* or *exception,* or *assignment in the motion for new trial,* concerning anything the Court said or did in the course of Anna Gregory's testimony, except the Assignment No. 8 in the motion for new trial, as previously copied; and that assignment did not relate to any "comment or admonition to Anna Gregory in the Jury's presence." So the majority has no right to leave the inference that Watkins objected to any admonition the Court might have given to Anna Gregory.

(2) *As Regards Shirley Mae Lambert.* Watkins only assignment in his motion for new trial relates to what the Court said to her *in chambers and outside the presence of the Jury.* I cannot see how, under such circumstances, any statements made by the Court to this witness, Shirley Mae Lambert, could have influenced the Jury, because the Jury did not hear any of the statements. In each of the cases cited by the majority, the remarks of the Trial Court were made *in the presence of the Jury.* The cases are: *Sharp* v. *State,* 51 Ark. 147, 10 S. W. 228, 14 Am. St. Rep. 27; *Crosby* v. *State,* 154 Ark. 20, 241 S. W. 380; *Williams* v. *State,* 175 Ark. 752, 2 S. W. 2d 36. These cases have no application to the situation in the case at bar, and the majority has cited these cases (on remarks made by the Judge in the presence of the Jury) as applicable to the remarks here involved, *which were made outside the presence of the Jury.*

When he took Shirley Mae Lambert and her attorneys away from the Jury and talked to the witness as he did, the Trial Judge was only trying to keep the Negro girl from committing perjury; and the conduct of the Trial Judge should be commended by this Court, rather than seized upon as a ground for reversal.

For the reasons stated, I respectfully dissent as to the reversal of the judgment against Watkins. The Chief Justice and Mr. Justice MILLWEE join in this dissent.