Derrick MITCHELL *v*. STATE of Arkansas

CR 95-439 913 S.W.2d 264

Supreme Court of Arkansas
Opinion delivered January 16, 1996

*Michael L. Allison*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Derrick Mitchell was tried and convicted of three offenses arising out of a shooting incident in Union Chapel, including first-degree murder. He appeals on six grounds. We hold that none of the points of appeal has merit, and we affirm.

During the early morning hours of January 8, 1994, a fight broke out at a party at Sonny's Place in Union Chapel. In order to stop the fighting, an individual named Michael Clemons fired at least one shot from his pistol at the ceiling, and the fighting stopped. Hearing the shots, appellant Mitchell kicked in the door at Sonny's Place and brandished a fully automatic Mac II nine millimeter pistol. According to one witness, he said: "You . . . want to play bad, I'm the baddest thing around." He started shooting and sprayed the ceiling and wall with gunfire. According to Shalla Criswell, she heard the shooting stop but when she and Felicia Payne came to the bedroom door, Mitchell opened fire again. Shalla Criswell was wounded in the side, and Felicia Payne was shot in the abdomen and later died as a result of that wound. According to Criswell, after the shooting Mitchell said: "I got the bitch," referring to Felicia Payne.

During a mental health evaluation before trial, Mitchell claimed that he had been possessed by a demon at the time of the

shooting. He was found fit to stand trial. At trial, he admitted shooting the victims but offered a defense. He claimed that he was inside Sonny's Place when a door slammed, and he felt the gun go off. He did not remember firing it himself. He blamed his memory loss on intoxication. He was convicted of first-degree murder, first-degree battery, and aggravated assault and received 40 years, 20 years, and 6 years, respectively. The circuit court ordered that the sentences be served consecutively.

■ Mitchell asserts that there was insufficient evidence to support his conviction for first-degree murder, and we consider this point initially, as is our practice. *Rockett* v. *State*, 319 Ark. 335, 891 S.W.2d 366 (1995). Mitchell has failed to preserve this issue for our review due to a lack of specificity in his motion for a directed verdict following the State's case. He merely stated in general terms that he did not believe that there was sufficient evidence to justify the charge. We set a bright line rule in *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994), and held that a motion for directed verdict in a criminal case must include the specific ground for the motion. In *Walker*, we quoted from earlier authority that a directed verdict motion must be sufficiently specific to apprise the circuit court of the particular point raised. *See Patrick* v. *State*, 314 Ark. 285, 862 S.W.2d 239 (1993), *quoting Middleton* v. *State*, 311 Ark. 307, 842 S.W.2d 434 (1992). Accordingly, we will not consider this point.

■ Mitchell next contends that the circuit court erred in finding him competent to stand trial. A defendant in a criminal case is ordinarily presumed to be mentally competent to stand trial, and the burden of proving incompetence is on that defendant. *Mask* v. *State*, 314 Ark. 25, 869 S.W.2d 1 (1993) (substituted opinion on denial of rehearing). The test for determining if an accused is competent to stand trial is whether he is aware of the nature of the charges against him and is capable of cooperating effectively with his attorney in the preparation of his defense. *See* Ark. Code Ann. § 5-2-302 (Repl. 1993); *see also Mauppin* v. *State*, 314 Ark. 566, 865 S.W.2d 270 (1993). In *Mauppin*, we stated:

> We have said that in order to be competent to stand trial an accused must have the capacity to understand the nature and object of the proceedings brought against him,

to consult with counsel, and to assist in the preparation of his defense. *Addison* v. *State*, 298 Ark. 1, 765 S.W.2d 566 (1989). Upon appellate review of a finding of an accused's fitness to stand trial, the appellate court will affirm if there is substantial evidence to support the finding of the trial court. *Id*.

314 Ark. at 567, 865 S.W.2d at 271.

Mitchell was evaluated in 1994 by a team headed by Dr. John Anderson, a psychologist with the Mental Health Services Division of the Arkansas Department of Human Services. He was found to be of average or low intelligence but able to understand the legal proceedings against him and to assist effectively in his own defense. The evaluation noted that other than Mitchell's own assertion that he was possessed by a demon at the time of the shooting, there were no other symptoms of a mental disorder at the time of the shooting. Tests were also administered, and Dr. Anderson concluded that the results of the Minnesota Multiphasic Personality Inventory-2 test were inconclusive in that Mitchell either did not read the questions, randomly answered them, or answered them in such a way as to over-report symptoms. Dr. Anderson stated during the competency hearing that Mitchell told him that there was a seven to eight minute gap in his memory during the shooting incident which might have been caused by a demon. Dr. Anderson concluded that Mitchell was competent to stand trial.

Mitchell offered no expert testimony to rebut these opinions. We conclude that substantial evidence supports the circuit court's ruling of competency to stand trial.

For his third point, Mitchell, who is black, argues that the makeup of the jury *venire* did not represent a fair cross section of the community. To support his contention, he points to the fact that when the circuit clerk first called 224 jurors for the *venire* only 35 reported, and when the clerk followed this with a call of 112 jurors, only 26 reported. In his motion to the circuit court, defense counsel emphasized that the *venire* contained only 3 or 4 black jurors which was disproportionately low for the racial makeup of Conway County where Union Chapel is located.

The State maintained that the *venire* was randomly selected from the voter registration list, but defense counsel countered:

> I know how that system works, but when they write in they have work hardships, illnesses, don't answer or respond to their letters, then it's not a random selection, it gets to be very selective because it boils down to just a few people that (sic) are interested enough in our system of government and our judicial system to serve on a jury.

The circuit court then called the circuit clerk, Carolyn Gadberry, who testified that there was no way to tell the racial makeup of the *venire* called from a voter list. The circuit court denied the motion to quash the *venire*.

■■ Mitchell had the burden of proving the systematic exclusion of members of his racial group from the *venire*. *Biggers* v. *State, 317 Ark. 414, 878 S.W.2d 717 (1994); Walker* v. *State,* 314 Ark. 628, 864 S.W.2d 230 (1993); *Walton* v. *State,* 279 Ark. 193, 650 S.W.2d 231 (1983). To make a *prima facie* showing of systematic exclusion, he had to establish (1) the group allegedly excluded was a distinctive group in the community; (2) the representation of this group in the *venire* was not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation was due to systematic exclusion. *Sanders* v. *State,* 300 Ark. 25, 776 S.W.2d 334 (1989). Only after he made his *prima facie* case by establishing these three elements could the burden shift to the State to justify its procedure. *Sanders* v. *State, supra.* When the jury *venire* is drawn by random selection, the mere showing that it is not representative of the racial composition of the population will not make a *prima facie* showing of racial discrimination. *Cleveland* v. *State,* 315 Ark. 91, 865 S.W.2d 285 (1993); *Thomas* v. *State,* 289 Ark. 72, 709 S.W.2d 83 (1986).

■ In the instant case, there was no dispute that blacks represented a distinctive group in the community. However, Mitchell did not establish the second and third elements of the *Sanders* test. He failed to offer statistical proof of the racial composition of the community or of the *venire*. Furthermore, he completely failed to offer evidence of systematic exclusion. As a result, there was no *prima facie* case, and, therefore, the burden never shifted to the State to justify its procedure. We further

note that two blacks sat on his jury. The circuit court correctly denied his motion to quash.

Mitchell next maintains that the circuit court erred in failing to make a sensitive inquiry into the circumstances surrounding his *Batson* challenge. During *voir dire*, the State sought to strike a black juror, Carolyn Hervey, for cause. Ms. Hervey stated on *voir dire* that she was related to Bryan Hervey, a State witness, by marriage, as well as being related to State witnesses Dejuan and Michael Clemons. Ms. Hervey admitted that she was their aunt. Michael Clemons, at one point, was a co-defendant in this action. Ms. Hervey stated, nevertheless, that she would not have a problem sitting on the jury even though her decision would be partially based on her relatives' testimony.

The prosecutor moved to strike Carolyn Hervey for cause based on her kinship with one of the former co-defendants and her suspected knowledge of the facts of the case. The defense retorted that Ms. Hervey stated that she could be objective in the case. The circuit court denied the motion to strike for cause. The State then used a peremptory challenge to strike Ms. Hervey, and the defense raised a *Batson* objection. The court ruled that there was a sufficient basis for the State to use one of its challenges.

■■ This court has stated the procedures to be followed when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case *and* the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Franklin* v. *State*, 314 Ark. 329, 338, 863 S.W.2d 268, 273 (1993); *see also Heard* v. *State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Sims* v. *State*, 320 Ark. 528, 900 S.W.2d 508 (1995). This court has stated that a *prima facie* case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total

or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions or statements by a prosecuting attorney during voir dire. *Gilland* v. *State*, 318 Ark. 72, 883 S.W.2d 474 (1994). The standard of review for reversal of a circuit court's *Batson* ruling is whether the court's findings are clearly against the preponderance of the evidence. *Sims* v. *State, supra.*

■ In the matter before us, Mitchell did not make a *prima facie* case. He failed to raise an inference of discrimination or to prove a disproportionate exclusion of blacks from the jury or a pattern of strikes. First, it is unclear from the record which party excluded which jurors, except for Juror Hervey. Secondly, the fact that one black member is struck from the jury, by itself, is not sufficient to make a *prima facie* case.

■ Moreover, we again observe that two blacks were actually seated on the jury in this case. In *Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990), this court concluded that the presence of minority members on the jury, while by no means determinative of the question of whether discrimination occurred, is significant. This court has also stated that the best answer the State can have to a charge of discrimination is to point to a jury which has black members. *Gilland* v. *State, supra; Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987). And, finally, even if a *prima facie* case had been proven, the State's explanation for the challenge was racially neutral, and the circuit court was well within its discretion to deny the *Batson* challenge.

■ Mitchell then contends that the circuit court erred in failing to exclude the victim, Shalla Criswell, from the courtroom during the testimony of other witnesses because she had given prior inconsistent statements regarding the events on the night of the shooting. The Rule (Ark. R. Evid. 615) was invoked by Mitchell in this case, and the circuit court ordered the exclusion of witnesses during the course of testimony from other witnesses at trial. Ark. R. Evid. 616 provides that "[n]otwithstanding any provision to the contrary" the victim of a crime shall have the right to be present during the trial of the offense. As we said in *Stephens* v. *State*, 290 Ark. 440, 720 S.W.2d 301 (1986), Rule 616 was added to the Rules of Evi-

dence by Act 462 of 1985, and we adopted the rule in that opinion. We noted that the presence of a victim in the courtroom throughout the trial conceivably could put the fairness of the trial in jeopardy under some circumstances, but that that was not the case in *Stephens*. Nor has Mitchell succeeded in showing us how fairness was jeopardized in his trial by the presence of one of his victims. We conclude that the circuit court did not err by permitting Shalla Criswell to attend Mitchell's trial.

 For his final argument, Mitchell contends that the admission into evidence of the nude autopsy photograph of Felicia Payne was prejudicial to his case and constituted error by the circuit court. This point is not preserved for our review in that the photograph at issue is not included in either the record of this matter or the abstract of testimony and evidence in Mitchell's briefs. It is impossible for this court to determine the degree of prejudice if the photograph in question is not before us. *See Russell* v. *State*, 269 Ark. 44, 598 S.W.2d 96 (1980).

Affirmed.