Willie Leon GREEN *v.* STATE of Arkansas

CR 97-59 956 S.W.2d 849

Supreme Court of Arkansas
Opinion delivered November 6, 1997
[Petition for rehearing denied December 11, 1997.]

*John Wesley Hall, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Sr. Asst. Att'y Gen., and *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Willie Leon Green was charged with capital murder in connection with the shooting

death of Little Rock Police Department Detective Joseph Fisher and attempted capital murder for the shooting of Little Rock Police Department Detective Frederick Lee. He was tried by jury and convicted of first-degree murder and attempted capital murder. He was subsequently sentenced to consecutive terms of life imprisonment and thirty years' imprisonment. On appeal, he raises six points for reversal. We affirm.

At trial, Detective James Stephens of the Little Rock Police Department testified that he was in charge of executing a search warrant at Green's apartment at approximately 7:55 p.m. on February 7, 1995. He testified that the plan was for Detectives Frederick Lee and Joseph Fisher to operate a battering ram for a forced entry into Green's apartment along with other police officers. Detective Stephens testified that he had established a position securing the rear of the apartment building when he heard his entry team yell, "Police, search warrant, police," followed by what he believed to be the battering ram striking the front door and a number of gunshots. He rushed to the front of the apartment building and found Detective Lee staggering out the door with a gunshot wound to the head. He saw Detective Fisher lying on the kitchen floor, where two police officers were attempting first aid. Police officers were also handcuffing Green and a woman named Donna Finney, who was on the couch near two children, one of whom was in a playpen. On cross-examination, Detective Stephens stated that he made the decision to execute the search warrant even though he knew that Green had been robbed the preceding month. He testified that some of his police officers wore police markings on their back and some wore vests with reflective tape that displayed "police" on the front.

Detective John Gravett confirmed that prior to breaching the door, he shouted, "Police, search warrant," at least two times. He testified that the door was breached between the first and second yell. As he followed Detective David Smith to the front door, he heard gunshots, and the first thing he saw was Detective Lee with blood on his face. He said shots were still being fired at the time when Detective Fisher shouted out that he had been hit. He testified that Detective Smith yelled, "Get your hands up or I'll shoot," or words to that effect, at which time Detective Gravett

saw Green squatting in the corner of the room with a gun at his feet. Detective Gravett admitted that it was common knowledge that Green's apartment had been the subject of a recent robbery.

Detective Donnie Bakalekos testified that he was standing behind Detectives Lee and Fisher when he shouted, "Police. Search warrant. Little Rock Police," prior to the door being rammed. He stated that he believed the entire squad yelled the same warning. He testified that he and Detective Ralph Breshears were assigned to secure the upstairs portion of the apartment. He explained that once the door was breached, he made it halfway up the stairs before he heard gunshots. He testified that Detective Breshears stood immediately below him on the stairs and fired his weapon.

Officer David Smith testified that he entered the apartment with a 12-gauge shotgun immediately behind Detective Fisher. He explained that he followed Detective Fisher until the time when Detective Fisher was shot. Once Detective Fisher fell to the floor, Officer Smith fired one round at Green, who attempted to hide behind some furniture. Officer Smith testified that the police officers' ability to maneuver inside the apartment was hampered by a child's playpen that appeared to be in the middle of the apartment. He testified that he fired his shotgun a second time when Green began firing from behind the furniture. Officer Smith testified that he yelled to Green to drop his gun and surrender, which Green did after Donna Finney shouted: "It's the police. Drop your gun."

Four other police officers confirmed that they heard their fellow police officers yell, "Police, search warrant." Norma Allen, a resident of Green's apartment complex, testified that she heard some people talking "loud" outside her apartment between 7:45 and 8:00 p.m. on the night of the killing, but she could not determine what they were saying. She testified that this was followed by a "boom" sound and then gunshots. She testified that she also heard screaming and a person yell, "Someone's down."

A Taurus .38 special revolver, which had been used by Green, was removed at the scene and contained five spent hulls. Cash in the amount of $505.39 was recovered from a purse located

in the apartment. In the kitchen, a hat containing a .38 round, a wallet, a pager, and $1,643.37 was found by police officers. Two plastic bags with green, vegetable matter were also recovered. Upstairs in Green's apartment, a Rossi .38 special revolver containing five live rounds was found in the master bedroom.

Donna Finney, Green's girlfriend and the mother of his two children, was called by the prosecutor as a witness. At the time of the slaying, she was seven months pregnant. She testified that she never saw the word "Police," written on any of the officers' vests. She also told the jury that the previous home robbery on January 7, 1995, caused Green and her to lose $2,000 in cash, along with a ring and a check. She stated that the robbers were black, wore ski masks, and broke into the apartment after midnight on a Friday night. She admitted that the police officers in this case were white and wore vests. She testified that they did not yell anything to identify themselves.

Former Detective Mark Sims testified that he and a confidential informant named John Cron were involved in four crack cocaine buys at Green's residence before the shooting. On February 7, 1995, there was a plan for Detective Sims and Cron to both be present during a hand-to-hand purchase of crack cocaine from Green. At the same time, Detectives Fisher and Lee were to watch from the outside. Sims, however, contacted the two detectives and told them that the plan had changed and that Cron was going to make the buy alone. After Cron's buy, Sims and Detective Fisher went to the Little Rock Municipal Judge to obtain the search warrant.

Dr. Charles Kokes, associate medical examiner, testified that he found gunshot entry and exit wounds on Detective Fisher's body. He testified that the bullet entered the area in front of his right shoulder, missing the bulletproof vest, passed through the right lung and severed a branch of the aorta, and exited through his upper left back. He opined that this gunshot wound was the cause of death. Ronald Andrejack, a firearms and toolmark examiner, testified that the fatal bullet was fired from the Taurus .38 special revolver. However, his test results with respect to the bul-

let retrieved from Detective Lee's head were inconclusive because the bullet was severely damaged.

Donna Finney also testified for the defense and stated that she was upstairs with her children on January 7, 1995, the date of the previous robbery. She heard a loud boom from downstairs. Green then came upstairs at gunpoint with a man behind him wearing a mask and demanding money. Finney next testified that on February 7, 1995, she was in the living room with Green and the two children when she heard a loud boom and the door "came in." She testified that she was aware that Green was firing his gun but told him to stop doing so when she realized it was the police. On cross-examination, she claimed that she was not selling drugs; that some of the money found by the police officers was her rapid-return federal tax money; and that she did not hear anything prior to the door being broken down.

Green testified in his own defense. He stated that he was home on January 7, 1995, with Donna Finney, the two children, and two friends when three armed men broke through the door and entered the living room. The men wore masks and demanded money. Green testified that he had recently received a check from a lawsuit that had settled and that he had just been paid from his job at St. Vincent Infirmary. He testified that he gave the men his money at gunpoint. After that robbery, he testified that he kept two loaded guns in the house for protection. He admitted that he began selling crack cocaine about that time to recoup the money that was lost. He also testified that he recognized Detective Sims from a previous job at University Hospital and that he never sold him drugs. He stated that he sold John Cron two rocks of crack cocaine on February 7, 1995. Later, he, Donna Finney, and the two children were in the living room when he heard a loud noise and saw men coming through the front door. Green stated that he thought it was another break-in and grabbed his pistol. He testified that he fired toward the door and not at any particular person and that he hoped to scare the intruders off. He explained that his biggest concern was for the safety of his child, who was in the playpen between himself and the front door. He testified that he was firing from an awkward position behind a piece of furniture and that he could only recall firing three times. He testified that

after those shots, he threw down his weapon to surrender when he was hit in the leg with a shotgun blast. He testified that he did not know that the police were coming that night and that he had no idea it was police detectives who were on the receiving end of his volley.

On cross-examination, Green stated that he was unaware that any of the officers were injured and maintained that he did not intentionally kill anyone. He stated that he only shot three times, but he could not explain how the pistol was out of bullets when he surrendered. He explained that he thought he shot first but that he was not certain.

In contrast to February 7, 1995, Green testified that the January 7, 1995 robbery was accomplished by three black males who were wearing ski masks. He testified that these men wore blue, which was a color associated with the Crips gang, but he denied that he was associated with the Park Street Pirus, a Bloods affiliate.

## I. Insufficiency of the Evidence

At trial, defense counsel's motion for directed verdict focused on the lack of premeditation and deliberation on Green's part because of the forced entry which was a complete surprise. The motion was denied.

The standard of review for motions for directed verdict has been stated often by this court:

> Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996); *Penn v. State*, 319 Ark. 739, 894 S.W.2d 597 (1995). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the state. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. *Id.* Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.* Only evidence supporting the verdict will be considered. *Moore v. State*, 315 Ark. 131, 864 S.W.2d 863 (1993).

*McGehee v. State*, 328 Ark. 404, 410, 943 S.W.2d 585, 588 (1997).

■ ■ With respect to Green's conviction for attempted capital murder, there was substantial evidence that he acted with premeditation and deliberation in the shooting of Detective Lee. A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996); *Carter v. State*, 324 Ark. 249, 921 S.W.2d 583 (1996); *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996). The necessary premeditation is not required to exist for a particular length of time and may be formed in an instant. *Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996); *Ward v. State*, 298 Ark. 448, 770 S.W.2d 109 (1989). Premeditation and deliberation may be inferred from the type and character of the weapon used, the manner in which the weapon was used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused. *Key v. State, supra; Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996), *cert. denied*, 117 S. Ct. 436 (1996).

■ In this case, viewing the evidence in the light most favorable to the State, there was substantial evidence that Green was guilty of attempted capital murder with respect to the shooting of Detective Lee. There was evidence that the police officers announced their presence outside of Green's apartment prior to breaking down the door. Once the door was knocked down, the first two men through, Detectives Fisher and Lee, were both shot. Fisher was shot with a bullet from Green's Taurus .38 special revolver. The jury could have inferred that Detective Lee was shot with a bullet from the same weapon. The revolver that was recovered at the scene contained five spent hulls. Detective Lee was also shot in the head, while wearing his police gear and after an announcement that they were police officers executing a search warrant. We conclude that this constitutes substantial evidence that Green was guilty of attempted capital murder with regard to Detective Lee.

■ Green makes two additional arguments on appeal with respect to lack of substantial evidence relating to his first-degree murder conviction for the shooting death of Detective Fisher.

Neither point should be considered, as neither was raised as part of Green's motion for directed verdict before the trial court. This court does not address arguments, even constitutional arguments, that are raised for the first time on appeal. *See, e.g., Travis v. State,* 328 Ark. 442, 944 S.W.2d 96 (1997); *Dulaney v. State,* 327 Ark. 30, 937 S.W.2d 162 (1997). The first argument appears to be that Green's conviction for first-degree murder was prejudiced by the submission of capital murder to the jury. His second point raised for the first time on appeal relates to self-defense. Both arguments are procedurally barred. We conclude that there is no basis for reversal on the first point.

## II. Comment on the Evidence

During its case-in-chief, the prosecutor called Donna Finney to testify. She was questioned at length about Green's involvement with selling drugs, and she proved to be hostile to the State on the subject. The prosecutor impeached her testimony with her prior statement given to police detectives. On cross-examination, defense counsel wanted to explore other topics contained in her statement, at which time the prosecutor objected on the ground that such questions were beyond the scope of direct examination. After the trial court overruled the objection, thus providing leeway to defense counsel, the following occurred:

> THE COURT: . . . But Ms. Finney, are you aware of what perjury is?
> MS. FINNEY: Huh-uh.
> THE COURT: Perjury is lying in an official proceeding, which this is. Not telling the truth. The consequences of that are that if you're convicted of it, you can be sent to the penitentiary from three to ten years and fined up to $10,000.
> You are now under oath and you are sworn to tell the truth. Do you understand that?
> MS. FINNEY: Yes, sir.
> THE COURT: All right. You may proceed.

Green argues that the trial court's admonition in the jury's presence was an unauthorized comment on the evidence in violation of Ark. Const. art. 7, § 23. There is no doubt that the

trial court intimated that it found the testimony of Ms. Finney not to be believable. We have held in the past that an insinuation by the trial court that a witness is committing perjury is an impermissible comment on the evidence by the trial court. *See, e.g., West v. State*, 255 Ark. 668, 671, 501 S.W.2d 771, 773 (1973)(holding the following to be an unconstitutional comment: "How much were you paid to come up with this information?"); *Watkins v. State*, 222 Ark. 444, 448, 261 S.W.2d 274, 277 (1953)(holding the following to be an unconstitutional comment: "Let me warn you whatever you said then they have it down word for word and you were under oath then and are under oath now, but if you tell the same things two different ways you are going to be guilty of perjury. You get yourself straight[.]"). Green admits that this error was not raised to the trial court but asserts that the argument is not barred because (1) this court searches the record for reversible error in life cases under Ark. Sup. Ct. R. 4-3(h), and (2) Ark. R. Evid. 103(d) provides that nothing in the rules precludes taking notice of errors affecting substantial rights though they were not brought to the attention of the trial court.

■ In interpreting Rule 4-3(h), this court has continually maintained its position that the language of Rule 4-3(h) does not mandate plain-error review. *See, e.g., Wright v. State*, 327 Ark. 558, 940 S.W.2d 432 (1997); *Webb v. State*, 327 Ark. 51, 938 Ark. 806 (1997); *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996), *cert. denied*, 117 S. Ct. 1853 (1997); *Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995); *Aaron v. State*, 319 Ark. 320, 891 S.W.2d 364 (1995). We have been constant in requiring an objection by counsel to preserve an issue for our review under Rule 4-3(h). The acknowledged exceptions to this rule are (1) death penalty cases involving an error in a matter essential to the jury's consideration of the death penalty itself; (2) cases where the trial judge made an error of which the appellant had no knowledge; (3) cases where the trial judge neglected his or her duty to intervene; and (4) cases involving evidentiary errors which affected the appellant's substantial rights. *Camargo v. State*, 327 Ark. 631, 640, 940 S.W.2d 464, 469 (1997), *citing Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). Green does not attempt to fit his situation into one of the four *Wicks* exceptions.

In addition, Green's argument cannot be salvaged by the language of Rule 103(d) of the Rules of Evidence. This court has previously held that this language does not authorize review of plain error. *See, e.g., Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996). This issue is barred from our review.

### III. Batson Challenge

The procedure for a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), is well settled:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case and the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Wooten v. State*, 325 Ark. 510, 514, 931 S.W.2d 408, 410 (1996), *cert. denied*, 117 S. Ct. 979 (1997), *quoting Prowell v. State*, 324 Ark. 335, 344, 921 S.W.2d 585, 591 (1996). *See Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996); *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995).

A *prima facie* case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during *voir dire*. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997); *Wooten v. State, supra*. The standard of review for reversal of a trial court's *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Id.* We have observed in this regard that "the trial court [is] in a good position to determine whether th[e] reason was genuine or pretextual." *Sonny v. Balch Motor Co.*, 328 Ark. at 330, 944 S.W.2d at 92, *quoting Hernandez v. New York*, 500 U.S. 352, 365 (1991).

At trial, Green objected to the State's use of peremptory strikes against two potential African-American jurors. One of

these jurors was Ruthie Hadley, whom the State sought to strike because she appeared to sleep 75 percent of the time through one previous trial and 98 percent of the time in another. Both of these trials were before the same trial court. The prosecutor offered to the trial court that he did not want a person with this history to sit on a capital-murder case. The court overruled the *Batson* objection and stated: "And I recall that that's one of the problems with this particular juror and I also recall that this juror was late both days of court and appears to have very little interest in the process."

The second potential juror was Frank McFadden, whom the State initially sought to strike because he had philosophical objections to the death penalty and stated that he was predisposed to sentencing a criminal defendant to life without parole. The trial court overruled the motion to strike for cause and determined that McFadden intimated that he could consider the death penalty under certain circumstances despite his philosophical opposition. When the State exercised its peremptory strike, a *Batson* objection was raised, and the prosecutor stated as his race-neutral explanation the same arguments made in support of his motion to strike. The trial court ruled that the explanation was sufficient.

We have held that there is no need for the prosecutor to give an explanation sufficient to strike a juror for cause. *Prowell v. State, supra.* Under these facts, we are not convinced that the trial court's rulings were clearly against the preponderance of the evidence. *Sonny v. Balch Motor Co., supra.* This point with respect to both jurors has no merit.

### IV. Misdemeanor Weapon Conviction

At trial, Green testified on cross-examination by the prosecutor that before January 7, 1995, he owned a handgun but did not carry it outside the house. The prosecutor sought to impeach his credibility with a certified copy of a 1992 misdemeanor judgment of conviction for possession of a weapon. Green's only objection was that the misdemeanor conviction was irrelevant. The prosecutor answered that the evidence was in response to Green's statement that he kept loaded guns in his house only to defend his

home. Green's objection was overruled, and Green denied knowledge of the misdemeanor conviction.

On appeal, Green argues that the prior misdemeanor conviction should not have been allowed into evidence under Rule 609 of the Arkansas Rules of Evidence. He admits that the only argument raised against its admission at trial was to relevance but urges now that "[the objection] was not well put, but it sufficiently apprised the trial court of what the complaint with the evidence was."

██ Arkansas law is clear that an appellant may not change arguments on appeal. *See, e.g., Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997); *Stephens v. State*, 328 Ark. 81, 941 S.W.2d 411 (1997); *Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996). We conclude that that is what has occurred in relation to the misdemeanor conviction. Consideration of this point is procedurally barred.

## V. Identification of Police Officers

During Green's direct testimony, he testified that he did not hear officers shout their identity prior to breaking down the door. He was then asked by defense counsel: "If you'd have heard it, what would you have done?" The prosecutor objected for the reason that an answer would have called for speculation. The trial court sustained the objection. Green did not proffer a response into the record, and his argument on appeal is that the trial court violated his Fourteenth Amendment due-process rights because he was prevented from fully presenting his case.

██ The State argues failure to proffer the response as rebuttal to Green's point. In order to challenge a ruling on excluded evidence, an appellant must proffer the excluded evidence so that the decision can be reviewed unless the substance of the evidence is apparent from the context. *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995). We believe that here the content of Green's response can be gleaned from the defense he offered at trial — he would not have shot the men had he known they were police officers. Indeed, Green testified on direct examination that he had

no idea he was shooting at police officers. We decline to decide this point on failure to proffer a response.

 This court, however, does not reverse a judgment of conviction absent prejudicial error. *See, e.g., Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997). We fail to discern reversible error under these circumstances when Green had already made it clear that he did not know the men were police officers and did not intend to kill anyone. This point is without merit.

## VI. Second-Degree Murder Instruction

At the jury-instruction conference, the trial court was faced with the issue of which version of AMCI 2d 1003 to give to the jury on the lesser-included offense of second-degree murder. The prosecutor sought and received the version of the second-degree murder instruction requiring proof that appellant "knowingly caused the death of Detective Joseph Tucker Fisher under circumstances manifesting extreme indifference to the value of human life." Green, however, asked for the alternative language in the second-degree murder instruction that Green "with the purpose of causing serious physical injury to another person, caused the death of Joseph Tucker Fisher." Green's requested instruction was denied, and he proffered it into the record. Both instructions contain correct statements of the law.

At the conference, the following colloquy occurred surrounding the two instructions:

THE COURT: Which one's correct?

PROSECUTOR: I would submit that the one that we submitted. The one that says, knowingly caused the death, et cetera, under circumstances manifesting, et cetera, et cetera, is the correct one because under the submitted one by defense counsel it says, with the purpose of causing serious physical injury to another person. The testimony by the defendant is that he was not trying to shoot anybody, I don't see how he

> could form the purpose of hurting that one individual —
>
> DEFENSE COUNSEL: Well, that's —
>
> THE COURT: I think he's right on that.

The trial court noted that Green's defense was that he was only shooting in the direction of the door as opposed to shooting at a particular person.

Green's testimony was that he had been robbed the previous month; that he maintained a loaded gun for protection; that he believed he was again being robbed when the police burst in; and that he did not intend to shoot anyone and only hoped to scare away the intruders. On appeal, the State again submits that Green's denial of an intent to shoot anyone negates the possibility that he had the purpose of causing serious physical injury to another person, and that the instruction Green requested was not required to be given. In support of its position, the State cites *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993), a case that stands for the well-established principle that a party cannot assert a complete denial of the offense and at the same time insist that a rational basis exists for instructing on a lesser-included offense.

This is not a case, though, where the issue is whether a rational basis exists to give an instruction on a lesser offense. *See, e.g., Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996); *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Fladung v. State*, 292 Ark. 510, 730 S.W.2d 901 (1987). An instruction on the lesser offense of second-degree murder was given. Rather, this is a case involving which alternative paragraph of AMCI 2d 1003, the second-degree murder instruction, should have been given. This appears to be a case of first impression for this court.

 We conclude that the trial court did not err in instructing the jury as it did. There is first the fact that it does seem inherently inconsistent for Green to testify that he did not shoot at anyone and then request an instruction that "with the purpose of causing serious physical injury to another person," he caused the death of Detective Fisher. Moreover, evidence was presented supporting the instruction that Green killed the police

officer under circumstances manifesting extreme indifference to the value of human life. For example, Green shot five times and hit two police officers. We are further mindful of the fact that the jury returned a verdict of guilty for first-degree murder, which included purposeful murder of Detective Fisher as an element of the offense. Under these circumstances, we cannot say that it was reversible error for the trial court to instruct the jury as it did.

The record has been examined under Ark. Sup. Ct. R. 4-3(h) for reversible error, and none has been found.

Affirmed.

NEWBERN, CORBIN, and IMBER, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I respectfully dissent because I believe that the trial court committed reversible error in failing to give the requested jury instruction on second-degree murder. I am concerned that the majority is establishing a new test for determining whether an instruction on a lesser-included offense is warranted without bothering to explain why the old "rational basis" test is not applicable.

The majority has concluded that when instructing on lesser-included offenses, a trial court must choose between alternate versions of an offense, even though, arguably, each version may be applicable to the facts in evidence. To my knowledge, that has never been the law in this State. The long-established test for instructing on lesser-included offenses is provided in Ark. Code Ann. § 5-1-110(c) (Supp. 1995):

> The court shall not be obligated to charge the jury with respect to an included offense *unless* there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. [Emphasis added.]

This court has repeatedly held that it is reversible error to refuse to give an instruction on a lesser-included offense *when the instruction is supported by even the slightest evidence. Spann v. State,* 328 Ark. 509, 944 S.W.2d 537 (1997); *Brown v. State,* 325 Ark. 504, 929 S.W.2d 146 (1996); *Rainey v. State,* 310 Ark. 419, 837 S.W.2d 453 (1992). This court will affirm a trial court's decision to exclude an instruction on a lesser-included offense *only if* there

is no rational basis for giving the instruction. *Spann*, 328 Ark. 509, 944 S.W.2d 537. Stated another way, where a rational basis for a verdict of acquittal on the greater offense and conviction on the lesser offense exists, the trial court should instruct on the lesser offense, and it is reversible error not to do so. *Brown*, 325 Ark. 504, 929 S.W.2d 146. Notwithstanding the fact that the defendant claims to have acted in self-defense, the decision to give an instruction on a lesser offense still turns on a determination of whether there is a rational basis for the instruction. *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993).

The majority attempts to distinguish this case by analyzing the issue in terms of *which* alternative paragraph of the second-degree-murder instruction should have been given. Why should the trial court have to make such a choice? I can see no reason why we are not reviewing this issue in terms of whether there was a rational basis for giving the proffered instruction. Clearly, there are situations in which more than one alternative version of a lesser-included offense is supported by the facts in evidence. In other words, a rational basis may exist for instructing on more than one version of an offense. This is one of those cases. Applying the "rational basis" test to the facts of this case, I cannot escape the conclusion that the trial court committed reversible error in refusing to give the proffered instruction.

Appellant contended below that the evidence warranted an instruction on second-degree murder on the theory that Appellant acted with the purpose of causing serious physical injury to another person in causing the death of Officer Fisher. The trial court rejected that instruction, electing instead to instruct the jury that in order to convict Appellant of second-degree murder, the State must prove beyond a reasonable doubt that Appellant knowingly caused the officer's death under circumstances manifesting extreme indifference to the value of human life. Appellant argues that it was reversible error for the trial court to refuse the proffered instruction. I agree.

The State argues that there was no rational basis for giving the proffered instruction on second-degree murder because Appellant denied any intent in firing at the officers. That argu-

ment is inconsistent with the fact that Appellant was convicted of the first-degree murder of Officer Fisher, on a theory that he had acted with the purpose of causing the death of another person. Clearly, if there was a rational basis for instructing the jury on Appellant's *purpose in causing the death of another person*, then there was an equally rational basis for instructing the jury on Appellant's *purpose in causing serious physical injury to another person.* The State cannot contend on the one hand that the proof will not support a finding that Appellant acted with the purpose of seriously injuring someone and, on the other hand, assert that the proof supports the *greater* finding that Appellant acted with the purpose of killing someone.

In accordance with the State's argument, the majority states that it is inherently inconsistent for Appellant to testify that he did not shoot at anyone and then request the instruction that with the purpose of causing serious physical injury to another person, he caused the death of Officer Fisher. That, however, is not the correct test. Since when has the determination of whether the proof supports a particular jury instruction depended upon only that evidence produced or claimed by the defendant? The proof either warrants the instruction or it does not. In *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995), the State appealed the trial court's refusal to instruct on the lesser-included offenses of second-degree murder and manslaughter, based on the trial court's rationale that if the defendant wanted to gamble between being convicted of the offense charged or being acquitted outright, it was his choice. This court declared error, holding that section 5-1-110(c) does not delegate the decision regarding the propriety of a lesser-included-offense instruction to the defendant, but, requires the trial court to determine whether the proffered instruction concerns a lesser-included offense and, if so, whether a rational basis exists for a verdict acquitting the defendant of the greater offense and convicting him of the lesser. Thus, the majority's reasoning that the evidence presented *by the defense* did not support the giving of the proffered instruction is flawed, because it is not for the defense to determine whether there exists a rational basis for an instruction on a lesser-included offense.

Here, the proof presented by both parties would have supported the jury's conclusion that Appellant acted with the purpose of causing serious physical injury to the persons entering his home. This is evident from the testimony by Appellant and his girlfriend, as well as some of the State's witnesses, that Appellant had been robbed one month earlier by a group of persons wearing dark clothing, who broke down his door and proceeded to rob him and his guests at gunpoint; that Appellant believed that the officers, who were wearing dark clothing instead of police uniforms, were the same or similar persons who had robbed him one month ago; that Appellant grabbed his gun and began firing in the direction of the door when he heard the door being broken down; that Appellant fired until his gun was empty; and that one officer was dead and another wounded by Appellant's actions in firing the gun. From that evidence, the jury could reasonably have concluded that Appellant was shooting at the intruders, believing them to be robbers, in an attempt to injure them.

Because I believe that there was evidence presented by both sides from which the jury could have determined that Appellant killed Officer Fisher having the intent to cause serious physical injury to another person, I would reverse the conviction and remand for a new trial.

NEWBERN and IMBER, JJ., join in this dissent.